[Civ. No. 33660.   Second Dist., Div. Four.   May 27, 1969.]

ANTHONY CHACON MARTINEZ et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

414

Walter L. Kroneberger, Jr., for Petitioners.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Eugene D. Tavris, Deputy District Attorneys, for Real Party in Interest.

KINGSLEY, J.—Defendants were arrested and charged with violation of sections 11501 and 11500.5 of the Health and

Safety Code; defendant De La Loza was also charged with a violation of section 11530 of that code. They made seasonable motions to dismiss the information, pursuant to section 995 of the Penal Code, and to suppress certain evidence, pursuant to section 1538.5 of that code. Both motions were denied and they petitioned this court for a writ of mandate to compel the granting of their motion to suppress and for a writ of prohibition to prevent their trial. We granted an alternative writ of mandate, directed to the denial of the motion to suppress; subsequently we issued an order to show cause directed to the portion of the petition which sought (without specifically citing section 999a) a writ of prohibition.

The facts of the case are as follows:

Deputy Sheriff Figueroa testified that he was assigned to the narcotic bureau for 11 months with prior experience in narcotics investigations; that he had been a deputy sheriff for 13 years. On March 5, 1968, Figueroa received information from a confidential informant that a person named Marcos, who lived at 732 South Belden, was selling heroin. As a result of this information the Belden location was placed under surveillance on two different occasions. On March 25th, Figueroa was contacted and received information from a confidential reliable informant to the effect that a Loco Louie, or Louie Martinez, was selling heroin from a location at 3919 Langford. This was a different informant than the one who had given Figueroa the March 5th information. The second informant, Frank Madrid, was reliable because he had previously provided Figueroa with information that resulted in arrests and convictions in three different narcotics cases within the past eight months preceding the time he testified. Madrid volunteered to attempt to purchase heroin from Loco Louie and further told Figueroa that if the seller were to see any strangers or peace officers in the vicinity, he would attempt to dispose of any contraband which he might have.

Figueroa further testified that, in his experience with narcotics and particularly heroin, suspects would often flush it down toilets or wash down drains to prevent its seizure; that this was very common in the narcotics field. Prior to Madrid's making his buy he was thoroughly searched and given $30 in county funds, the serial numbers noted. Madrid was then followed to the Langford address where he honked his horn. He met Martinez who came out of the Langford address. Martinez then went back into the house—after apparently talking to Madrid for about five minutes. After this occurred, Madrid

talked to Figueroa and said that Loco Louie didn't have any narcotics at his house, but he wanted Madrid to drive him to Belden Avenue where Marcos had "the stash."

Figueroa followed Madrid and Martinez to the Belden Street address. Martinez went into the house. Martinez came out of the Belden location and got into Madrid's automobile remaining there two minutes, after which he went back into the Belden house. Two or three minutes later Madrid drove to a location where he met Figueroa and gave him an object which appeared to contain heroin. Madrid said that he had "scored" and further "this is what I received from Louie Martinez." Figueroa then went back to the Belden Street address and with other officers forced entry. They, of course, did not have a warrant of arrest or a search warrant. Upon entering the house, Figueroa saw Marcos De La Loza running in the direction of one of the bedrooms shouting, "It's the narcos! It is the narcos!"

Martinez and Marcos De La Loza were arrested for suspcision of possession of narcotics.

Mrs. De La Loza was also arrested for suspicion of possession of narcotics. The premises were searched and contraband recovered. Mrs. De La Loza was also searched as well as her purse. Money was found on her and the serial numbers of the bills taken from her matched those given to Madrid to make the purchase of heroin.

I

It is clear that the officer's personal explanation for entering without warning falls directly within *People* v. *De Santiago* (1969) 71 Cal.2d 18 [76 Cal.Rptr. 809, 453 P.2d 353]. The only question on the validity of the entry arises out of the testimony by the officer that the informer (Madrid) had told him that Martinez would try to destroy evidence. The record on that point is as follows: At the preliminary examination, the officer testified that Madrid had told him ". . . that if Louie saw anybody strange or any deputies around his residence he would attempt to dispose of any contraband he had in his possession." It cannot be ascertained from this testimony whether Madrid was speaking on the basis of some personal knowledge of Martinez' *modus operandi* or whether he was merely stating the same generalized belief as to all narcotic suspects on which the officer relied and which *De Santiago* holds to be insufficient. ■ The burden is on the People, once an entry in violation of section 844 of the Penal Code appears, to show facts sufficient to meet the

test laid down by the Supreme Court in *People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706] and re-emphasized in *De Santiago*, as follows: ". . . where officers have obtained *particular* information which leads them to reasonably conclude that the occupants of an apartment or residence have *specifically* resolved to effect disposal in the event of police intrusion or have made *specific* preparations in that regard . . . an unannounced entry may be justified." (Italics added.) (*People* v. *De Santiago, supra* (1969) 71 Cal. 2d 18, 28.) ■ No proof of any such specific preparation or resolution appears in this record. It follows that the entry was unlawful, the search that followed was also unlawful, and the motion to suppress the evidence thus found should have been granted.

## II

■ It is not contended that, if the evidence found in the house is suppressed, there is any evidence remaining that would support the information as to De La Loza; as to him a dismissal of the prosecution necessarily follows.

■ Nor can we find anything in the evidence secured prior to the entry that supports the information as against Martinez. Madrid did not testify and the evidence of his statements to the officer, admittedly hearsay as to Martinez, were offered only to show probable cause for the arrest and entry, not on the issue of guilt. While the officer saw, and testified to, some of Madrid's activities, Madrid was out of the officer's sight for several periods of time and, on one occasion, was seen in the presence of an unidentified third person. Under those circumstances, the case against Martinez falls under the "fatal gap" theory. His motion to dismiss should also have been granted.

Let a peremptory writ issue: (1) directing the respondent court: (a) to vacate its order denying the motion to suppress evidence and to make an order granting such motion, and (b) to vacate its order denying the motion to dismiss the proceeding and to make a new order granting such motion; and (2) prohibiting the respondent court from taking any other or further action in case number A-405279 except as herein expressly directed. The alternative writ of mandate and the order to show cause, heretofore issued in this case, having served their function, are discharged.

Files, P. J., and Jefferson, J., concurred.