[Civ. No. 35264. Second Dist., Div. Three. Nov. 26, 1969.]

JOE LOPEZ GUERRERO, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

David F. Aberson for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**FEINERMAN, J. pro tem.**\*—Pursuant to Penal Code section 1538.5, subdivision (i), petitioner seeks a writ of mandate directed to respondent court requiring it to annul its action of August 14, 1969, denying his motion to suppress evidence, and to make a new and different order granting the motion to suppress evidence.

We have concluded that the trial court's action in denying the motion to

---

\*Assigned by the Chairman of the Judicial Council.

suppress evidence was correct and that the alternative writ heretofore issued should be discharged and the peremptory writ denied.

### Statement of Facts

By stipulation of the parties, the 1538.5 motion was submitted to the trial court on the transcript of the preliminary examination and argument by counsel. Evidence of the following facts was presented at the preliminary examination: At approximately 6 p.m. on May 27, 1969, Deputy Sheriff Richard Kennerly contacted a confidential informant at East Los Angeles sheriff's station. The informant told Deputy Kennerly that a person by the name of "Joe," whom he described as a male Caucasian of Latin descent, approximately 35 to 40 years old, 5 feet 7 inches in height, and 135 pounds in weight, was living at 1571 Ridgecrest, Apartment "F," and drove a blue Camaro which he parked in stall number 76 underneath the apartment building.

Deputy Kennerly testified that "He [the informant] stated that in order to obtain narcotics from a person named Joe, he would have to go to his house and knock on the door. That person was very leery of the police. He would open the curtain which was adjacent to the door to see who it was. If he recognized you and he had narcotics, he would let you inside the location. He said that if he thought it was the police, he would attempt to destroy the evidence. He said if you called the person named Joe on the telephone, that the person would always say he did not have any narcotics."

After receiving this information from the informant, Deputy Kennerly went to the apartment complex and contacted the manager. The manager told the deputy that a man was living at the location who fit the description given him and that the apartment was registered to a Nita Rene Daniel. He also stated that he had previously called the Monterey Park Police Department because of "his suspicions of the persons and the numerous traffic going to and from that location." The manager then provided Deputy Kennerly with the license number of the blue Camaro and a key to Apartment "F."

Deputy Kennerly checked out the license number given to him and was advised that the car was registered to a Jose Guerrero. Thereafter, the officer returned to the East Los Angeles sheriff's station and conducted a search of the informant who had previously agreed to cooperate in an attempt to purchase narcotics from "Joe" at the location in question. The informant, who was found to have no narcotics on his person, was furnished with $25 in county funds, the serial numbers of which had been recorded. The informant was taken to the vicinity of the residence under surveillance.

Deputies watched him walk to the front door of 1571 Ridgecrest, Apartment "F," observed him knock on the door, saw the door opened, saw him enter the apartment, and saw him exit from the apartment approximately five minutes later. The informant walked back to the sheriff's car, handed a small yellow balloon to Deputy Kennerly, and stated that "he had purchased it from a suspect known as Joe who was in the location and the only other persons in the location were his [Joe's] wife and small child."

Officers entered the apartment where they observed the petitioner and Nita Rene Daniel standing in the northeast bedroom of the apartment. Petitioner was arrested, advised of his *Miranda* rights, and then searched. He was found to have $675 on his person. Twenty-five dollars was the same money that had been given to the informant prior to his going to the location. A subsequent search of the apartment turned up the narcotic contraband which was seized by the officers and admitted into evidence at the preliminary examination.

### The Legality of the Entry
### Into the Apartment

The sole issue presented is the validity of the deputy sheriffs' entry into the premises without complying with Penal Code section 844.[1] It is the contention of the People that the trial court had sufficient evidence before it from which it could infer that the informant had personal knowledge of defendant's preparation for the destruction of evidence if and when police officers were to come to the premises, and that in reliance thereon, the officers were authorized to enter the premises without compliance with Penal Code section 844.

Petitioner relies upon *People* v. *Marquez,* 273 Cal.App.2d 341 [77 Cal. Rptr. 907], and *Martinez* v. *Superior Court,* 273 Cal.App.2d 413 [78 Cal.Rptr. 427], to support his conclusion that the trial judge in this case did not have "substantial specific facts" in the information given by the informant to the authorities to justify an inference of personal knowledge regarding those matters about which the informant had given information.

In *People* v. *De Santiago,* 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809,

---

[1]Penal Code section 844 provides as follows: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

453 P.2d 353], the California Supreme Court held that ". . . the particular reason for entry must be based upon the specific facts of the case. █ Thus, where officers have obtained particular information which leads them to reasonably conclude that the occupants of an apartment or residence have specifically resolved to effect disposal in the event of police intrusion or have made specific preparations in that regard [citations], or when officers prior to entry are able to detect activity from within which leads them to reasonably conclude that the occupants are then engaged in the destruction or concealment of evidence [citations], an unannounced entry may be justified. In these cases, however, compliance with the applicable knock-and-notice provision is excused not because of a blanket rule based on the type of crime involved but because the particular circumstances of the case give rise to a reasonable belief that immediate action is necessary to prevent the destruction of physical evidence." The determination of what constitutes "reasonable belief" by a police officer that "immediate action is necessary" is a question of fact for the trial judge. (*People* v. *Kanos,* 70 Cal.2d 381, 384-385 [74 Cal.Rptr. 902, 450 P.2d 278].)

█ When the particular information relied upon by police officers is received from an informant, there must be either direct factual allegations by the informant that he had personal knowledge of the incriminating facts related by him, or there must be sufficient significant detail in the information conveyed to justify an inference of personal knowledge by the trial judge. (*People v. Hamilton,* 71 Cal.2d 176, 181-182 [77 Cal. Rptr. 785, 454 P.2d 681]; *People* v. *Cain,* 261 Cal.App.2d 383, 386 [67 Cal.Rptr. 922].) We must also recognize the fact that these two categories of evidence are not mutually exclusive. Substantial evidence from which personal knowledge can be inferred may be utilized to corroborate the informant's statements of such knowledge. (*People* v. *Cain, supra; People* v. *Hernandez,* 255 Cal.App.2d 478, 482 [63 Cal. Rptr. 133].)

In *People* v. *Marquez, supra,* the informant had advised police that the defendant "would flush the narcotics down the toilet." The court held that the evidence before the trial judge did not support an inference that the informant ". . . had any personal knowledge of his [defendant's] methodology in cases where his establishment was raided" and did not supply the "particular information" required by *De Santiago.* The court stated that the information received was ". . . no more than the informants' opinion that defendant probably would destroy the evidence because narcotic

violators often do so when the police seek entry." (*People* v. *Marquez,* 273 Cal.App.2d 341, 344 [77 Cal.Rptr. 907].)

In *Martinez* v. *Superior Court, supra,* a police officer testified that the informant had told him ". . . that if Louie saw anybody strange or any deputies around his residence he would attempt to dispose of any contraband he had in his possession." The court concluded: "It cannot be ascertained from this testimony whether Madrid was speaking on the basis of some personal knowledge of Martinez' *modus operandi* or whether he was merely stating the same generalized belief as to all narcotic suspects on which the officer relied and which *De Santiago* holds to be insufficient." (*Martinez* v. *Superior Court,* 273 Cal.App.2d 413, 416 [78 Cal.Rptr. 427].)

The case at bench is readily distinguishable from *Marquez* and *Martinez.* ■ Here, the informant provided sufficient detailed information —both directly and by inference—to justify the finding by the trial judge that the information received by the officers was based on personal knowledge. The informant stated that "he [the informant] would have to go to his [petitioner's] house and knock on the door" and that the petitioner (1) would open the curtain which was adjacent to the door to see who it was, (2) would let you inside the location if he recognized you and had a supply of narcotics, (3) would attempt to destroy the evidence if he thought it was the police, and (4) if you called him on the phone, he would always say he did not have narcotics.

Where, as here, the direct allegations of the informant indicate that he is familiar with the *modus operandi* of the petitioner because he has had personal dealings with the petitioner on that basis in the past, and these direct allegations are corroborated in part by the personal observations of the deputy sheriffs, it is not unreasonable for the trial judge to infer that the rest of the information received from the informant also came from personal knowledge.

The alternative writ of mandate is discharged, and the peremptory writ of mandate is denied.

Ford, P. J., and Schweitzer, J., concurred.