[L. A. No. 29657. In Bank. Dec. 4, 1969.]

PAUL GEORGE DUKE, JR., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Richard S. Buckley, Public Defender, Barry Russell and James L. McCormick, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

## Opinion

**TOBRINER, J.**—The District Attorney of Los Angeles County filed an information against Paul George Duke, Jr., charging him with possession of sodium secobarbital, a restricted dangerous drug, in violation of section 11910 of the Health and Safety Code. Petitioner entered a plea of not guilty and moved to suppress evidence under section 1538.5 of the Penal Code. The parties stipulated to the submission of the motion on the transcript of the preliminary examination and argument by counsel. The superior court held a special hearing (§ 1538.5, subd. (i)) and denied the motion. Petitioner thereupon filed the instant petition for an alternative writ of mandate (Pen. Code, § 1538.5, subd. (i)).

We shall point out why we have ordered the issuance of a peremptory writ of mandate directing the respondent court to grant petitioner's motion to suppress the evidence obtained as a result of the search of petitioner's home on January 21, 1969. We have concluded that (1) in searching petitioner's home the police officers failed expressly to comply with the requirements as to notice and identification of section 844 of the Penal Code and failed substantially to comply with the requirements of that section as to announcement of the purpose of the officers' entry; (2) neither the consent of the petitioner's wife given when she was absent from the premises, nor the circumstances of the search excused compliance with section 844;[1] and (3) the subsequent entry rendered the search and seizure "unreasonable" within the meaning of the Fourth Amendment. (*Greven* v. *Superior Court* (1969) 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Rosales* (1968) 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706]; *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113].)

### 1. *The facts presented at the preliminary examination*

In the early morning hours of January 21, 1969, Raul D. Amescua, a police officer with the Los Angeles Police Department, interviewed petitioner's wife, Judith Duke, at 433 Delores Street. She complained to the officer that petitioner had slapped and beaten her, that she was afraid of him, and that she had observed a bottle of red pills in a medicine cabinet in the bathroom which she had never seen before. She gave the officer permission to enter her house at 413 McDonald Street, indicated that the front door was unlocked, and said that the petitioner was asleep in the

---

[1]Hereinafter, unless otherwise indicated, all section references are to the Penal Code.

bedroom. The officer summarized the result of the interview: "she gave me permission to enter her house to find out what these pills were and see if I could arrest her husband for ADW."[2]

Petitioner's wife did not accompany Officer Amescua and his fellow officer to her home. The officers knocked on the front door, waited about 30 seconds, heard no response or any other noise, did not identify themselves as police officers, did not verbally demand admittance, did not explain the purpose for which they desired admittance, opened the closed but unlocked door, and walked into petitioner's bedroom where he was sleeping. The officers approached petitioner, asking him if his name was Paul Duke. Petitioner responded in the affirmative. After speaking briefly with petitioner, Officer Amescua went into the bathroom of the residence, looked into the medicine cabinet, and found a bottle containing red pills on the third shelf. The officers placed petitioner under arrest. A forensic chemist later identified the pills as capsules of sodium secobarbital, a restricted dangerous drug which induces sleep.

### 2. *The police officers did not comply with section 844*

■ The entry here in question did not comply with the terms of section 844, and the Attorney General does not suggest that it did so.[3] Section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, *after having demanded admittance and explained the purpose for which admittance is desired.*"[4]

---

[2]The officer's abbreviation apparently referred to section 245 of the Penal Code (assault with a deadly weapon or with force likely to produce great bodily injury). The officers of the Los Angeles Police Department initially arrested petitioner upon suspicion of violation of section 245 of the Penal Code and section 11910 of the Health and Safety Code (possession of dangerous drugs). On January 27, 1969, the Municipal Court of the Los Angeles Judicial District conducted a preliminary hearing; the court held petitioner to answer to the superior court on one count of violating section 11910 of the Health and Safety Code.

[3]We held in *Greven v. Superior Court, supra,* 71 Cal.2d 287, 290-291, that the question of compliance with section 844 properly comes before us when the defendant promptly raises the issue as a ground for a motion to suppress evidence under section 1538.5 and seeks appropriate extraordinary relief upon denial of this motion.

[4]Section 844 derives from quite ancient common law protections of the right of the homeowner. (See *Miller v. United States* (1958) 357 U.S. 301, 306-308 [2 L.Ed.2d 1332, 1336-1337, 78 S.Ct. 1190]; *Accarino v. United States* (1949) 179 F.2d 456, 460-462 [85 App.D.C. 394]; Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California* (1964) 112 U.Pa. L.Rev. 499, 500-508; Kaplan, *Search and Seizure: A No-Man's Land in the Criminal Law* (1961) 49 Cal.L.Rev. 474, 498-503.) The counterpart to section 844 is section

(Italics added.) The police officers knocked and waited no more than 30 seconds before opening the closed but unlocked door;[5] they did not comply with the terms of section 844 in that they failed (1) to knock or utilize other means reasonably calculated to give adequate notice of their presence to the occupants, (2) to identify themselves as police officers, and (3) to explain the purpose of their demand for admittance. (*Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 289; *People* v. *Rosales, supra,* 68 Cal.2d 299, 302.)

This court has held that the police cannot comply with the absolute minimum required by section 844 without (1) knocking or utilizing other means reasonably calculated to give adequate notice of their presence to the occupants and (2) identifying themselves as police officers. (*Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 291-292.) We have, however, found substantial compliance with the requirement of section 844 as to statement of purpose in some cases in which the police officers identified themselves and requested admittance before entering, but did not expressly state the purpose of their request for admittance.

In *People* v. *Rosales, supra,* 68 Cal.2d 299, 302, we held that identification alone could constitute substantial compliance with the requirement of section 844 as to the statement of purpose only if the surrounding circumstances made the officers' purpose clear to the occupants. In *Rosales,* we found that the police did not comply with the section when they

1531 for searches with warrants. Other jurisdictions have enacted similar statutes. (See, e.g., 18 U.S.C. § 3109; *Miller* v. *United States, supra,* 357 U.S. 301, 308-309 fn. 8 [2 L.Ed.2d 1332, 1337-1338, 78 S.Ct. 1190]; Blakey, *The Rule of Announcement and Unlawful Entry: Miller* v. *United States and Ker* v. *California, supra,* 112 U.Pa.L.Rev. 499, 508-514.) This provision in its present form has served to protect the privacy of California citizens since 1874. (See Stats. 1873-1874 (Amendments to the Codes), ch. 614, § 40, at 435-436.)

[5]The decisions in *People* v. *Rosales, supra,* 68 Cal.2d 299, 303, and *Sabbath* v. *United States* (1968) 391 U.S. 585, 589-590 [20 L.Ed.2d 828, 833-834, 88 S.Ct. 1755], make clear beyond doubt that entrance through an unlocked but closed door or screen door must comply with section 844. In *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 294-295, we held, in overruling *People* v. *Cox* (1968) 263 Cal. App.2d 176 [69 Cal.Rptr. 410], that if the police entered through a propped-open back door and then opened an inner door to explore part of the house, such entrance constituted "breaking" within the meaning and purposes of section 844. On the problem of fraudulently obtained entrance see *Gouled* v. *United States* (1921) 255 U.S. 298 [65 L.Ed. 647, 41 S.Ct. 261]. The purposes of section 844 require the police to knock, demand admittance, and state their reason for demanding entry even if the police need not open an outside door in order to enter. If the occupants cannot immediately identify the intruders as police officers the sound of intrusion itself may cause a dangerous confrontation between the citizens and the police.

identified themselves but failed to request admittance or to explain their purpose. In *Greven* v. *Superior Court, supra,* 71 Cal.2d. 287, 295, a case in which the police rapped on the door, waited 10 to 15 seconds, received no response, opened the closed but unlocked door, and went into a house where several people were asleep and one person was reading at the kitchen table, we held that substantial compliance cannot be "achieved.in the absence of statement of authority prior to entry."[6]

Hence, the police in the instant case did not comply with the absolute minimum required by section 844 in that they did not demand admittance prior to entry and state their authority. (*Greven* v. *Superior Court, supra,* 71 Cal.2d 287.) Furthermore, even if the police had met these requisites, the circumstances of this case would have required an explanation of purpose. Only in a case in which an occupant of a house or apartment could reasonably be expected to know the purpose of the police visit without notification, have we found that a mere demand for admission accompanied by a statement of authority constituted substantial compliance with the explanation of purpose requirement of section 844. (See *People* v. *Marshall* (1968) 69 Cal.2d. 51, 55-56 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 665-666 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Martin* (1955) 45 Cal.2d 755, 762-763 [290 P.2d 855].)

■ The present case does not indicate any justification for the failure of the police to announce their purpose as required by section 844. Although petitioner had assaulted his wife a few hours before the police arrived and petitioner possessed some sodium secobarbital, apparently for his own use, petitioner had gone to sleep long before the police arrived. Nothing indicates that he could have divined their purpose in wishing to

---

[6] "One might contend that the police substantially complied with section 844 in the instant case by knocking and waiting 30 seconds for a response before entering petitioner's home. *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 295, however, holds that the absolute minimum compliance with section 844 requires the police both to knock and to state their authority prior to entry.

If the police enter a house in which people are sleeping without first knocking and stating their authority, the occupants may be awakened by the sound of intruders breaking down the front door and moving through the house. The frightened homeowner might respond by attempting to protect his home and its occupants; he might thereby provoke an unnecessary conflict with the police. On the other hand, if the police use means reasonably calculated to give adequate notice to the sleeping occupants (cf. *Mullane* v. *Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306 [94 L.Ed. 865, 70 S.Ct. 652]), the occupants may awake, understand that the police are outside, and answer the door. The privacy of the individual and the safety of all parties concerned require compliance with section 844.

enter even if they had announced their identity. Petitioner had not been in contact with the police during the evening before he went to sleep. (Compare *People* v. *De Santiago* (1969) 71 Cal.2d 18, 29-30 [76 Cal. Rptr. 809, 453 P.2d 353], with *People* v. *Martin, supra,* 45 Cal.2d 755, 762-763.) He was not, during that evening, engaged in dealing in drugs with a number of strangers, one of whom might be an informant. (See *People* v. *Marshall, supra,* 69 Cal.2d 51; *People* v. *Cockrell, supra,* 63 Cal.2d 659.)

3. *Compliance with section 844 was not excused by the consent of petitioner's wife to search the premises, by the belief of the officers that compliance would have increased their peril, or by furtive conduct of the occupant of the premises*

Although we have concluded that the police neither fully complied with all the requirements of section 844 nor substantially complied with the section's statement of purpose requirement, we must still consider whether the consent of petitioner's wife to the search of her home or other circumstances excused such compliance. ■ The purposes and policies underlying section 844 are fourfold: (1) the protection of the privacy of the individual in his home (see *Sabbath* v. *United States, supra,* 391 U.S. 585, 589 [20 L.Ed.2d 828, 833, 88 S.Ct. 1755]; *Miller* v. *United States, supra,* 357 U.S. 301, 313 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 292; *People* v. *Maddox* (1956) 46 Cal.2d 301, 306 [294 P.2d 6]); (2) the protection of innocent persons who may also be present on the premises where an arrest is made (see *People* v. *Rosales, supra,* 68 Cal.2d 299, 304); (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice (*Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 292-293; see *Sabbath* v. *United States, supra,* 391 U.S. 585, 589; *Miller* v. *United States, supra,* 357 U.S. 301, 313, fn. 12 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; *People* v. *Rosales, supra,* 68 Cal.2d 299, 304; and (4) the protection of police who might be injured by a startled and fearful householder.

In a case in which the police did not identify themselves, did not demand entrance, and did not state the reasons for their demand for admittance, the consent to search by an absent cotenant would not promote the policies underlying section 844. The absent spouse could not waive the right to privacy of her husband who was then occupying the premises. (See *Tomp-*

*kins* v. *Superior Court, supra,* 59 Cal.2d 65, 69.) If the husband had awakened and heard intruders enter his home without explanation and had responded to the invasion with the reasonable force a homeowner may use in expelling night prowlers, the two young children who were in the house, the police, and the homeowner might have suffered injury. (Pen. Code, §§ 692-694; see Perkins, Criminal Law (2d ed. 1969) 995-1018 (self-defense); 1018-1022 (defense of others), 1022-1025 (defense of habitation).) On the other hand, if the police had identified themselves and stated their authority, the danger of confrontation would have been drastically reduced. (Pen. Code, § 834a; see *People* v. *Curtis* (1969) 70 Cal.2d 347, 357 [74 Cal.Rptr. 713, 450 P.2d 33].)

 The consent to search by the wife who is absent from the premises does not affect, or in any way reduce, the danger of confrontation between the homeowner and the intruder. Section 844 protects the right to privacy of the person who occupies the premises where police seek entry; the right adheres to the occupant even when his cotenant wife, who is not present, consents to a police search.

In *Tompkins* v. *Superior Court, supra,* 59 Cal.2d 65, 69, one of two roommates of an apartment, when he was absent from the premises, gave the police the keys to the apartment. After a full discussion of the historical rights of cotenants and joint tenants, we concluded: "A joint occupant's right of privacy in his home is not completely at the mercy of another with whom he shares legal possession. [Citations.] Accordingly, we hold that one joint occupant who is away from the premises may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time, at least where as in this case, no prior warning is given, no emergency exists, and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter."[7] The reasoning of *Tompkins* compels the conclusion that a person in common ownership or control, such as a wife, who is not within the premises cannot give such consent to enter and search the premises as to excuse the police from complying with the requirements of section 844. (See *People* v. *Shelton* (1964) 60 Cal.2d 740, 743, 745-746 [36 Cal.Rptr. 433, 388 P.2d 665], in which we held that a joint tenant outside the door of his apartment with the police could not waive the right to privacy of the occupant.)

---

[7]"A husband and wife may hold property as joint tenants, tenants in common, or as community property." (Civ. Code, § 161.) Whatever the various characteristics of these methods of holding property between joint tenants, tenants in common, tenants in copartnership, landlord and tenant, or husband and wife (see generally, 3 Thompson on Real Property (1959) §§ 1029 et seq., 1070 et seq.; 1 Armstrong, California Family Law (1953, 1966 Cum.Supp.) § 585 et seq.), we cannot draw any rational distinction between the various sorts of common ownership and control which would affect the application of the policies of section 844.

We have excused noncompliance with section 844, as well as its companion section 1531, in cases in which the officer, before his entry, possessed information which led him reasonably to believe that compliance would have increased his peril or frustrated the arrest. (*People* v. *Smith* (1966) 63 Cal.2d 779, 797 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Gilbert* (1965) 63 Cal.2d 690, 706-707 [47 Cal.Rptr. 909, 408 P.2d 365]; *People* v. *Hammond* (1960) 54 Cal.2d 846, 854 [9 Cal.Rptr. 233, 357 P.2d 289]; *People* v. *Carswell* (1959) 51 Cal.2d 602, 607 [335 P.2d 99] In the present case the prosecution has adduced no facts from which a police officer could have formed a good faith belief that compliance with section 844 would have increased his peril or frustrated arrest. (See *People* v. *Kanos* (1969) 70 Cal.2d 381, 384-385 [74 Cal.Rptr. 902, 450 P.2d 278]; *People* v. *Rosales, supra,* 68 Cal.2d 299, 303-304.)[8]

---

[8]Although in briefs before the Court of Appeal and in briefs before this court the Attorney General relied completely upon the wife's consent to justify the police officer's failure to comply with the knock and notice requirements of section 844, the Attorney General at oral argument for the first time suggested that compliance with section 844 was excused because of emergency circumstances. The Attorney General contended that because the husband had been charged with assault with a deadly weapon and because he had been treated at a mental institution, the police might have concluded that the husband was a dangerous person. Although we need not consider this issue because of the Attorney General's failure to apprise the court or the petitioner of his contention prior to oral argument (see Cal. Rules of Court, rule 22; *Patten* v. *County of San Diego* (1951) 106 Cal.App.2d 467 [235 P.2d 217]; *Lotts* v. *Board of Park Comrs.* (1936) 13 Cal.App.2d 625, 636 [57 P.2d 215]), we find that in any event the contention lacks merit.

First, nothing in the record indicates that the petitioner had assaulted his wife with anything more than his hands in a manner which might conceivably have caused great bodily harm. (Pen. Code, § 245; see 5 Cal.Jur.2d, Assault and Battery, §§ 10-11, at 312-317.) The Attorney General has never suggested that the petitioner possessed, or would have used, any offensive weapon that would have exposed the police to additional danger if they had complied with section 844. In fact, the officers knew when they entered the premises that defendant was asleep and apparently had earlier consumed two seconal capsules to overcome his insomnia. The police knew that petitioner was under care at Harbor General Hospital for that condition. Further, the police admitted that they did not believe that petitioner would escape if they complied with section 844. On no occasion did the officers indicate that they believed that compliance with section 844 would have significantly endangered their security. Nor does the factual situation disclose any such additional danger.

The wife had also told the officers that her husband had been "a patient at Norwalk State Hospital and that he never returned to Norwalk State Hospital. That is a mental hospital . . . ." The mere fact that petitioner had once been treated at a mental hospital or even possibly had left a mental hospital without permission would not excuse compliance with section 844. We have held in *People* v. *Kanos, supra,* 70 Cal.2d 381, 384, that an escape from custody does not excuse compliance with section 844. In *People* v. *Rosales, supra,* 68 Cal.2d 299, 303-304, the fact that the officers were seeking a parole violator, a "fugitive from justice," did not excuse compliance with section 844. Clearly, a person who had received treatment in a

We have also excused compliance with sections 844 and 1531 to prevent the destruction of evidence in narcotics cases in which there is a specific showing of furtive conduct. (*People* v. *Carrillo* (1966) 64 Cal.2d 387, 391-392 [50 Cal.Rptr. 185, 412 P.2d 377] (defendant rushing around inside house); *People.* v. *Maddox, supra,* 46 Cal.2d 301 (officers knocked, heard a male voice call, "wait a minute," followed by the sound of re-treating footsteps, and then forced entry).) But in *People* v. *Gastelo, supra,* 67 Cal.2d 586, we expressly rejected the prosecution's suggestion that an unannounced entry by police should be permitted, as a matter of general policy, because narcotics violators normally are on the alert to destroy the easily disposable evidence quickly at the first sign of an officer's presence. (See *Sabbath* v. *United States, supra,* 391 U.S. 585, 591 [20 L.Ed.2d 828, 834, 88 S.Ct. 1755] (imported narcotics); *People* v. *Benjamin* (1969) 71 Cal.2d 296, 299 [78 Cal.Rptr. 510, 455 P.2d 438] (bookmaking).)

 The instant case demonstrates the wisdom of the *Gastelo* rule; petitioner allegedly possessed restricted dangerous drugs but the police could not show that an unannounced entry was necessary to prevent destruction of evidence. (See *People* v. *De Santiago, supra,* 71 Cal.2d 18, 29.) Since the police knew petitioner was sleeping in his bedroom, they could not conceivably establish the justification of furtive conduct. Hence, the specific factual circumstances of the search could not create a reasonable belief on the part of the police officers which, because of the necessity for preventing the destruction of .evidence, discouraging escape, or insuring the officers' safety, would excuse the failure of the police to comply with section 844. (See *People* v. *Hamilton* (1969) 71 Cal.2d 176, 178 [77 Cal.Rptr. 785, 454 P.2d 681]; see also *Sabbath* v. *United States, supra,* 391 U.S. 585, 591, fn. 8 [20 L.Ed.2d 828, 834, 88 S.Ct. 1755]; *Ker* v. *California* (1963) 374 U.S. 23, 47 [10 L.Ed.2d 726, 746, 83 S.Ct. 1623] (opinion of Brennan, J.).)

4. *The police officers unreasonably invaded the petitioner's privacy and violated his Fourth Amendment rights*

 Since we have concluded that the police officers did not comply

---

mental hospital or who had escaped from such an institution does not lose his right to privacy against unreasonable intrusions by the police in the absence of specific facts from which the police could form a reasonable, good faith belief that compliance with section 844 would impose substantial additional risk. A citizen who has received treatment for mental illness, has been paroled, or has been placed on probation, does not thereby automatically lose his right of protection against an unreasonable search and seizure.

with the requirements of section 844 and did not possess any excuse for failing to comply with that section, we must hold that an entry effected in violation of the provisions of section 844 or its companion section 1531 renders any subsequent search and seizure "unreasonable" within the meaning of the Fourth Amendment. (*Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 290; *People* v. *Rosales, supra,* 68 Cal.2d 299, 304-305.) As a consequence, an unexcused failure to fulfill the knock and notice requirements delineated by section 844 nullifies the subsequent search and requires exclusion of the evidence obtained. (*Mapp* v. *Ohio* (1961) 367 U.S. 643, 655, 660 [6 L.Ed.2d 1081, 1089, 1093, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *People* v. *Benjamin, supra,* 71 Cal.2d 296, 299; *People* v. *Hamilton, supra,* 71 Cal.2d 176, 178; *People* v. *De Santiago, supra,* 71 Cal.2d 18, 30; *People* v. *Kanos, supra,* 70 Cal.2d 381, 384.)

Let a peremptory writ of mandate issue directing the respondent court to grant petitioner's motion to suppress the evidence obtained as a result of the search of petitioner's premises conducted on January 21, 1969.

Traynor, C. J., Peters, J., and Sullivan, J., concurred.

**MOSK, J.**—I dissent.

The majority have correctly recited the underlying principles of law controlling the disposition of this case. And I have no quarrel with the basis for the legislative enactment of Penal Code section 844 and the general desirability of compliance therewith. There are undoubtedly a number of punctured bodies occupying cemetery plots today because defenders of their own castles were unable to distinguish between unidentified law enforcement officers and unauthorized intruders.

However, in this instance the majority deftly detour past some relevant factual circumstances and therefore misapply existing law to arrive at an erroneous destination.

The arresting officer testified that the defendant's wife, in making a complaint for felony assault with a deadly weapon, informed him "that he came home that night and they got into an argument, then he slapped her and choked her until she became unconscious, and then she observed her dog was dead, possibly from an overdose of pills." She also advised the police officer that her husband had been a patient at Norwalk State

Hospital, a mental institution, and that he had not returned to the hospital. An inference could be drawn therefrom that he was an escapee or a psychiatric parole violator. The wife not only "requested" the officer to enter the house in order to arrest the defendant, she advised the officer that "the front door was unlocked."

When the officer and his partner approached the front door, they complied with section 844 to the extent of knocking but they did not identify themselves in the silent darkness because "no one answered" their knock. If no one responds, to whom do they identify themselves? Knowing that the wife had purposely left the door unlocked in order to facilitate their entry, the officers entered the premises and placed the defendant under arrest.

In *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113], we concluded that a joint occupant who is away from the premises may not authorize police officers to enter and search the premises "over the objection of another joint occupant who is present at the time," as in that case, where "no emergency exists." There the joint occupant had been sought and arrested by the police. Here the wife, a joint occupant, not only authorized the police officers to enter and search the premises, she affirmatively made the initial contact and request, and there was no entry made over the objection of the other joint occupant. Thus *Tompkins* is distinguishable.

*Tompkins* did, however, refer to the existence of an "emergency" (at p. 69), and other cases suggest that noncompliance with section 844 may be excused if there are "exigent circumstances" (*Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 295 [78 Cal.Rptr. 504, 455 P.2d 432]). I would find the following to be a significant congeries of exigent circumstances: in the early morning hours the wife, a joint occupant of the premises, sought out and affirmatively requested the police to enter and search the premises and to arrest the defendant, her spouse; the other occupant of the premises, the defendant, had been accused of a felony involving violence—assault with a deadly weapon; the defendant had been a patient in a mental hospital and may have been an escapee or psychiatric parole violator; the wife reported defendant may have killed their dog that night, and the defendant was known to have dangerous drugs in his

possession or under his immediate control. The foregoing facts justified the arresting officers in omitting ritualistic compliance with section 844.

I would deny the petiton for writ of mandate.

McComb, J., and Burke, J., concurred.