[Crim. No. 16248. Second Dist., Div. Five. Feb. 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFRED GONZALES PERALES, Defendant and Appellant.

## COUNSEL

Frank P. Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kallay, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**AISO, J.**—Defendant was charged by information with illegal possession of heroin (Health & Saf. Code, § 11500). Defendant thereafter made motions to set aside the information and to suppress evidence under sections 995 and 1538.5 of the Penal Code. Each motion was denied.

Defendant pleaded "Not Guilty" and personally and through counsel waived the right to a jury trial. All counsel and defendant stipulated to submission of the cause on the preliminary hearing transcript. After a reading of the transcript, the court found defendant "Guilty" as charged.

Defendant's motion for a new trial was denied. Criminal proceedings were then adjourned and a petition ordered filed for an examination of defendant and a hearing pursuant to section 3051 of the Welfare and Institutions Code. At the hearing held in Department 95 of the Superior Court of Los Angeles County, defendant was found to be a narcotic drug addict and committed to the Director of Corrections for placement as provided for by law.

Defendant appeals from the "judgment" rendered against him and from the order denying his motion for a new trial.[1]

In an earlier case, defendant was placed on probation and ordered, as a condition of such probation, to submit to Nalline tests. Defendant failed to report for his scheduled test on June 26, 1968. On July 5, 1968, the date defendant was due to appear in the office of his probation officer, Jerome P. Breen, defendant telephoned Breen stating that he would be unable to keep his appointment because he was going to be working that day. During the following week Officer Breen was on vacation and received no further communication from defendant.

At about 2:30 p.m. on the date Breen returned from his vacation, July 12, 1968, he received a telephone call from the social worker assigned to defendant's children advising that defendant was home at 1007 East Alondra, City of Compton. Breen knew that defendant resided at that address during the entire period defendant was on probation under his supervision, from information given by defendant and from the fact that defendant had signed for a "receipt requested" telegram at that address. He also knew where defendant resided from information given to him by defendant's wife and a social worker.

Suspecting defendant to still be at home that night, Breen in the company of three police officers went to the Compton address at 10:30 p.m. to arrest defendant for violation of probation under section 1203.2 of the Penal Code.[2] Breen was informed by the officer who had arrested defendant

---

[1]Since defendant was committed for treatment for drug addiction, no final judgment was entered. However, the notice of appeal was filed October 17, 1968, prior to the 1968 amendment to Penal Code section 1237, subdivision 1 (effective November 13, 1968). An order denying a motion for new trial was appealable where the defendant had been committed for narcotics addiction.

[2]Penal Code section 1203.2: "At any time during the probationary period of the person released on probation . . . any probation or peace officer may without warrant, or other process, at any time until the final disposition of the case, rearrest

for the matter for which he was then on probation that defendant was a "rabbit," a person likely to run when approached by police officers. With this information in mind, Breen sent two officers to the rear door of the house in which defendant was staying and Breen proceeded to the front door with the remaining officer. The front door was open or ajar but the screen door was closed but not locked. Holding his badge in his hand in front of him, Breen knocked on the front door and identified himself as "Mr. Breen, Probation Officer." He asked defendant's wife, who was in the front room, to open the door. She did not open the door, but instead turned to the back of the house and stated, "It's the heat. They're coming in." Officer Breen then opened the screen door, proceeded into the home, and handed his identification badge to defendant's wife. Breen asked the police officer with him to go to the back room of the house and then escorted the officer there. In the back room Breen and the police officer found defendant and a Mr. Donley. Probation Officer Breen told defendant to come forward and turn around, and advised him that he was under arrest for violation of probation pursuant to section 1203.2 of the Penal Code. The other officers who were in the back of the house were then called to come into the room.

Upon entering the back room and while standing in the doorway, Breen noticed a wrapper for a "26½ needle" used for an injection of an opiate drug, next to a hamster cage and resting on a chest of drawers, which was approximately 4 feet to his left from the doorway entrance. Breen then announced that he was going to search the house, to which defendant responded "You can't search the house unless you have a warrant." Breen stated, "We don't need a warrant. We are going to search anyway," and proceeded to search the room with the assistance of the police officers. He had no official warrant to conduct a search of the premises.

Police Officer Anthony D. Ruiz, one of the officers assisting Breen, searched a small alcove closet in the room where defendant was located and discovered a Gillette Razor Blue Blade, a tablespoon, a measuring spoon, a syringe with a bubble on the end, and a cork into which was stuck a hypodermic needle. Also found in the closet were another hypodermic needle inside of a scabbard, one burnt match, and a folded piece of blue paper containing an amount of white powder substance. At trial it was stipulated that the blue paper held .4 grams of a powder containing an opiate alkaloid, heroin. Probation Officer Breen, trained in field of narcotic and narcotic paraphernalia identification, testified that the above items found in the closet are used for the injection of an opiate drug.

The wrapper found on the dresser in the room had the marking

---

any person so placed on probation under the care of a probation officer, . . . if the interests of justice so require. . . ."

"26G ½" and was identified by Breen as being a "26G ½-inch length needle wrapper of the discard variety," used as a sheath for a needle. Next to the wrapper was also found a piece of blue tissue paper with a damp reddish stain that appeared to be used for cutting off the flow of blood after an injection. As Breen was placing defendant into custody he removed from defendant's hand a stiff piece of blue paper that was somewhat crumpled. The blue paper had black soot on it, similar to the soot that was on the back of the spoon found, and was folded in the same manner as a "ten-dollar bindle" of heroin. Two other pieces of paper of the type used to contain a "narcotic outfit" or a "narcotic using paraphernalia" were also discovered in the search.

After the arrest and at the police station, Breen, who had qualified on previous occasions as an expert in the identification of marks made by the injection of narcotics, examined the arms of defendant. He observed four injection sites on defendant's left inner elbow which, in his opinion, were caused within the previous five days; and three fresh marks on the back of defendant's left hand, one of which was made within a day, and the other two possibly within two or three days.

Defendant's sole contention on this appeal is that the entry of Probation Officer Breen and the accompanying police officers was in violation of Penal Code section 844 and, therefore, all evidence obtained as a result of such illegal entry should have been suppressed. (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 325 [82 Cal.Rptr. 348, 461 P.2d 628]; *People* v. *Kanos* (1969) 70 Cal.2d 381, 384 [74 Cal.Rptr. 902, 450 P.2d 278]; *Mapp* v. *Ohio* (1961) 367 U.S. 643, 655, 660 [6 L.Ed.2d 1081, 1089-1090, 1093, 81 S.Ct. 1684, 1691, 1694].)

Penal Code section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer,[3] may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded *admittance and explained the purpose for which admittance is desired.*" (Italics added.)

█ In general, before breaking into a building to effectuate an arrest, a peace officer must fulfill the mandates of section 844 by: (1) knocking or employing some other means reasonably calculated to notify occupants of his presence, (2) identifying himself as a peace officer, and (3) explaining the purpose of his demand for admittance. (*Duke* v. *Superior Court* (1969)

---

[3]The classification of "peace officer" includes a probation officer. See Penal Code section 1203.12 paragraph 2 (Stats. 1935, p. 1715; Amend. Stats. 1951, ch. 1608, § 16). Paragraph 2 was deleted from the statute in 1968 (Amend. Stats. 1968, ch. 1222, § 60) and replaced with Penal Code section 830.5 (Stats. 1968, ch. 1222, § 1).

*supra,* 1 Cal.3d 314, 319; *Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 291-292 [78 Cal.Rptr. 504, 455 P.2d 432].) The provisions of section 844 must be complied with in an arrest of a probation violator under Penal Code section 1203.2, just as they must be in return of out-patients under Welfare and Institutions Code section 3151 and arrests of parole violators and escapees from custody under Penal Code sections 3061 and 855. (*People* v. *Kanos* (1969) *supra,* 70 Cal.2d 381, 384; *People* v. *Rosales* (1968) 68 Cal.2d 299, 303, 304 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *White* (1969) 270 Cal.App.2d 680, 681 [76 Cal. Rptr. 104]; *People* v. *Meison* (1968) 261 Cal.App.2d 322, 323-324 [67 Cal.Rptr. 750].)

■ At the time Officer Breen opened the unlocked screen door without permission from any of the house's occupants, he committed a "breaking" within the term of section 844 (*People* v. *Rosales* (1968) *supra,* 68 Cal.2d 299, 303). He had complied with the requirements of knocking and identi-fying himself, but had failed to announce the purpose for which he sought entry. Failure to announce the purpose of entry, however, was excused under the circumstances surrounding the officer's entry in this case.

Our Supreme Court has held that knocking (or other reasonable means of notification of presence) and identification constitute legally sufficient substantial compliance with the terms of section 844 under certain circum-stances. (*Greven* v. *Superior Court* (1969) *supra,* 71 Cal.2d 287, 291-292; *People* v. *Marshall* (1968) 69 Cal.2d 51, 55-56 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Rosales* (1968) *supra,* 68 Cal.2d 299, 302.) ■ Strict compliance with explanation of the purpose for which admit-tance is sought may be excused where the police reasonably and in good faith believe that the purpose of the police entry is already known to the occupant, or believe that complete technical fulfillment of section 844 would permit destruction of evidence. (*People* v. *Rosales* (1968) *supra,* 68 Cal.2d 299, 302, 305; *People* v. *Maddox* (1956) 46 Cal.2d 301, 305-306 [294 P.2d 6], cert. denied 352 U.S. 858 [1 L.Ed.2d 65, 77 S.Ct. 81]; *People* v. *Limon* (1967) 255 Cal.App.2d 519, 522 [63 Cal.Rptr. 91], cert. denied 393 U.S. 866 [21 L.Ed.2d 135, 89 S.Ct. 151]; see *Ker* v. *Cali-fornia* (1963) 374 U.S. 23, 40-41, 47 [10 L.Ed.2d 726, 742, 746, 83 S.Ct. 1623, 1633-1634, 1636].)

The reasonable belief that the police officer must entertain to excuse strict compliance with section 844 must be based on the specific facts of

the case and not on the officer's general experience dealing with criminals. Thus, an officer cannot rely on the general propensity of narcotics violators to dispose of evidence upon hearing of the presence of the police, but rather he must have specific information from which he can reasonably deduce that the violators are preparing to destroy or are in the midst of destroying evidence upon his arrival. (*People* v. *De Santiago* (1969) 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809, 453 P.2d 353]; *Guerrero* v. *Superior Court* (1969) 2 Cal.App.3d 136, 140 [82 Cal.Rptr. 443].) "Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen." (*People* v. *Gastelo* (1967) 67 Cal.2d 586, 589 [63 Cal.Rptr. 10, 432 P.2d 706].) Whether the police officer had the requisite reasonable belief that technical compliance with the explanation-of-purpose command of section 844 was excused is a question of fact to be determined by the trier of fact under the circumstances of the particular case. (*People* v. *Kanos* (1969) *supra,* 70 Cal.2d 381, 384-385; *Guerrero* v. *Superior Court* (1969) *supra,* 2 Cal.App. 3d 136, 140.)

In the instant case, Officer Breen came to arrest defendant for missing the Nalline tests, attendance at which was a condition of probation. Defendant's prior conviction involving narcotics and his failure to appear for the Nalline testing gave the officer sufficient cause to believe that defendant was in possession of narcotics. (*People* v. *Carrillo* (1966) 64 Cal.2d 387, 392 [50 Cal.Rptr. 185, 412 P.2d 377], cert. denied 385 U.S. 1013 [17 L.Ed.2d 549, 87 S.Ct. 723].) When defendant's wife turned towards the rear of the house and exclaimed, "It's the heat. They're coming in," Breen could reasonably conclude that the wife was signaling defendant to destroy narcotics evidence (cf. *People* v. *Lopez* (1969) 269 Cal.App.2d 461, 464, 468 [74 Cal.Rptr. 740]) or that she knew the purpose of the officers' mission because she was aware that her husband had violated a condition of probation and was subject to immediate arrest. Either one of these reasonable beliefs could excuse strict compliance with section 844. (*People* v. *Boone* *(Cal.App.) 81 Cal.Rptr. 310; *People* v. *Nash* (1968) 261 Cal.App.2d 216, 226 [67 Cal.Rptr. 621], cert. denied 393 U.S. 944 [21 L.Ed.2d 281, 89 S.Ct. 315]; *People* v. *Limon* (1967) *supra,* 255 Cal. App.2d 519, 522.) The manner of Officer Breen's entry was, therefore, not illegal.

Although Breen stated that he arrested defendant for violation of probation, after the officer saw the wrapper of a 26G ½-inch length needle on the chest of drawers defendant could also have been arrested for pos-

---

*A rehearing was granted by the Court of Appeal on October 15, 1969. The final opinion is reported in 2 Cal.App.3d 503 [82 Cal.Rptr. 566].

session of narcotics. *(People* v. *Carrillo* (1966) *supra,* 64 Cal.2d 387, 392; *People* v. *Clark* (1968) 263 Cal.App.2d 87, 92-93 [69 Cal.Rptr. 218]), or for possession of narcotics paraphernalia (Health & Saf. Code, § 11555). The arrest on any one of these bases would have justified the ensuing reasonable and proper incidental search. *(United States* v. *Rabinowitz* (1950) 339 U.S. 56, 66 [94 L.Ed. 653, 660, 70 S.Ct. 430, 435]; *Ker* v. *California* (1963) *supra,* 374 U.S. 23, 42 [10 L.Ed.2d 726, 743, 83 S.Ct. 1623, 1634].) The rule of *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] does not apply retroactively. *(People* v. *Edwards* (1969) 71 Cal.2d 1096, 1107 [80 Cal.Rptr. 633, 458 P.2d 713].) The motions to set aside the information and to suppress the evidence seized were properly denied since the real evidence was not the product of an illegal entry.

The order denying motion for new trial is affirmed; the attempted appeal from a nonexistent judgment is dismissed.

Kaus, P. J., and Stephens, J., concurred.