[Crim. No. 17507. Second Dist., Div. Four. Jan. 29, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT GONZALES, Defendant and Appellant.

**COUNSEL**

Don Edgar Burris, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**FILES, P. J.**—In this narcotics case the main issue is the sufficiency of the evidence to support the finding of the trial court that an entry into a home without a compliance with Penal Code section 844 was excused by reason of the officers' reasonable belief that evidence would otherwise have been destroyed.

Defendant is here appealing from the judgment following his conviction of possession of methadone (Health & Saf. Code, § 11500) and sale of heroin (Health & Saf. Code, § 11501). Prior to trial the court denied defendant's motion to suppress the evidence taken from his home without a warrant. Defendant then waived a jury trial and submitted the case to the court upon the transcript of the preliminary examination and the evidence received on the motion to suppress.

The only testimony in the record is that of Deputy Sheriff Kennerly, who was attached to the narcotics bureau.

On May 9, 1968, Deputy Kennerly received information from a reliable informant[1] that defendant was engaged in the sale of heroin. In Kennerly's presence the informant dialed a telephone number purported to be that of defendant and, after being asked whether he had "any stuff," the male voice at the other end of the line explained that he was expecting a "shipment."

That night, and again the following day, the informant telephoned Kennerly and told him that he was in touch with defendant and that the narcotics had not yet arrived. On the evening of May 13, 1968, Kennerly was again contacted by the informant who stated that he was to meet with defendant in 15 minutes at defendant's house to purchase ¼ ounce of heroin. Kennerly and other officers then met with the informant, searched him for contraband, and furnished him with $50 with which to make the purchase. The serial numbers of the bills given the informant had been recorded.

After driving the informant to the vicinity of defendant's home, the officers observed him walk to the front of the house and meet with defendant. The two engaged in conversation for approximately four minutes, after which the informant walked back to Kennerly and handed him a red balloon. The balloon contained approximately ¼ ounce of tannish brown powder which resembled, and was later stipulated to be, heroin.

The informant stated that he had purchased the balloon and its contents from defendant and that it was possible that he had more narcotics inside the house. The officers immediately proceeded to the Gonzales residence where Kennerly forced entry by kicking in the front door. He neither announced his presence nor identified himself as a police officer until after he had entered defendant's home. When Kennerly entered the household he observed both defendant and his wife standing in the bedroom.

Defendant and his wife were placed under arrest and informed of their rights. Seven white tablets, identified by their markings as methadone, were found near the place where defendant was seen standing. A further search of the bedroom revealed $359 in currency on top of a double bunk. Kennerly examined this money and determined that $50 of the $359 were the same bills which had been given to the informant.

The failure of the People to take the steps necessary for locating the

---

[1]Kennerly testified that the informant had, on at least two previous occasions, furnished information which led to arrests and convictions, and had never supplied information which did not lead to arrests and convictions.

informant, in accordance with the rule later adopted in *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42] is of no consequence. That rule is not applicable to this case, which was tried in 1969, before the *Eleazer* opinion came down. (*People* v. *Fortier* (1970) 10 Cal.App.3d 760, 766 [89 Cal.Rptr. 210].)

█ The remaining issue is whether the officers lawfully entered defendant's home to seize the methadone which is the basis of his conviction under the possession count.

The record clearly indicates that by entering the Gonzales residence in the manner previously described, the police failed to comply with the requirements of Penal Code section 844.[2]

Unless there was a legally acceptable excuse for the noncompliance, the entry was unlawful and the trial court would have been obliged to suppress the evidence seized inside the house. (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 325 [82 Cal.Rptr. 348, 461 P.2d 628].)

█ One of the judicially recognized exceptions to the requirements of section 844 is where the officer reasonably believes the delay will result in a destruction of evidence. (See *People* v. *Maddox* (1956) 46 Cal.2d 301, 305 [294 P.2d 6].)

In *People* v. *De Santiago* (1969) 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809, 453 P.2d 353], the Supreme Court explained the application of that principle thus: " 'Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen.' [Citation.] Moreover, the particular reason for entry must be based upon the specific facts of the case. Thus, where officers have obtained particular information which leads them to reasonably conclude that the occupants of an apartment or residence have specifically resolved to effect disposal in the event of police intrusion or have made specific preparations in that regard [citations], or when officers prior to entry are able to detect activity from within which leads them to reasonably conclude that the occupants are then engaged in the destruction or concealment of evidence [citations], an unannounced entry may be justified. In these cases, however, compliance with the applicable knock-and-notice provision is excused not because of a blanket rule based on the type of crime involved but because the particular circumstances of the case give rise to a reasonable

---

[2]Penal Code section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

belief that immediate action is necessary to prevent the destruction of physical evidence."

Deputy Kennerly testified concerning his May 9 conversation with the informant as follows: "The informant further stated that since the last time the defendant got arrested, he has been pretty leery about where he kept his narcotics, and that he would keep it at different locations.

"He further stated that if the defendant would happen to see deputies, that he would destroy the evidence."

The officer further testified: "Prior to the 13th, the day of the arrest, and also on the day of the arrest, I received information from the informant to the effect that if the defendants were to see the police or if he knew the police were around, he would destroy the evidence."

When the witness was examined by the trial court, the following exchange occurred:

"THE COURT: Did your informant ever say to you that he had ever conversed with either defendant regarding the destruction of narcotics?

"THE WITNESS: Yes.

"THE COURT: What did he say in that respect?

"THE WITNESS: That is where he got his information from Defendant Robert Gonzales dues [sic] to his prior arrest, something to the effect that he would not get caught again with the evidence.

"THE COURT: I take it you are saying that the informant, in substance, related the conversation with Robert to the effect that he, Robert, would not get caught again with the evidence?

"THE WITNESS: Yes, and if he were to see the police he would destroy it."

Deputy Kennerly also testified that the informant had told him that both defendant and his wife had been arrested "approximately one month before, and they had been awful leery of the police since that time."

On May 13, after the informant had given the officers the heroin he had purchased from defendant, the informant stated that it was possible that narcotics were in the house, but that he was quite sure that most of it was kept at another location. He further stated, as Kennerly testified, " 'You had better get in there fast,' or words to this substance, 'because they will get rid of it.' " When asked why he entered the Gonzales residence in the manner previously described, Kennerly responded, "I forced entry into the location because I felt that the defendants would destroy any evidence

they might have in the location." This belief was based on "The information I had received from the informant, plus my experience in the past."

█ The uncontradicted and unimpeached testimony of Deputy Kennerly supports the finding of the trial court that the officers did have particular information which led them reasonably to conclude that the defendant and his wife had specifically resolved to effect disposal in the event of police intrusion. (See *Guerrero* v. *Superior Court* (1969) 2 Cal.App.3d 136 [82 Cal.Rptr. 443].) The evidence here is significantly different from that which was held insufficient in *People* v. *Marquez* (1969) 273 Cal. App.2d 341 [77 Cal.Rptr. 907] and *Martinez* v. *Superior Court* (1969) 273 Cal.App.2d 413 [78 Cal.Rptr. 427]. The failure of the officers to identify themselves and demand admittance under the circumstances here does not make the evidence inadmissible.

The evidence supports the verdict on each count.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 26, 1971. Peters, J., was of the opinion that the petition should be granted.