[Crim. No. 6998.   Second Dist., Div. Three.   Oct. 24, 1960.]

THE PEOPLE, Respondent, v. LEWIS RUBEN ESCOTO, Appellant. (Consolidated Cases.)

Lewis Ruben Escoto, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

VALLÉE, J.—By indictment, defendant was accused of illegally selling heroin on February 17, 1959. By information, he was accused of illegally possessing heroin on March 5, 1959. The actions were consolidated for trial. A jury returned verdicts finding defendant guilty as charged. A motion for a new trial in each action was denied. In each action judgment was pronounced sentencing defendant to state prison, the sentences to run concurrently. Defendant appealed from the judgments. The causes are here on a consolidated record and will be disposed of in one opinion.

### The Charge in the Indictment

About 11 a.m. on February 17, 1959, Deputy Sheriff Trujillo, in civilian clothes, saw defendant on Bonnie Beach Street in Los Angeles. The officer was accompanied by a male of Mexican descent who had called him at a sheriff's station. They were in an automobile. They parked in front of defendant and he went up to the car. Trujillo asked defendant if he had any "stuff," which meant heroin. Defendant said he did not have any with him at the time, but half an ounce would be delivered to him about 1:30 or so that afternoon; he would be on the boulevard and if Trujillo had $20 he would get a gram from Eddie. Trujillo agreed. Defendant got in Trujillo's car and sat in the rear seat. He told the officer to drive to Record Street, which he did. When they arrived there they parked in front of 1024 South Record

Street. Trujillo then gave defendant $20. Defendant left the car, walked north on Record, and met a male of Mexican descent. A conversation ensued, and defendant and the other person exchanged something. The other person turned and walked away. Defendant returned to the officer's car and told him to return to Bonnie Beach Street.

When they arrived at Bonnie Beach, defendant got out and handed the officer a balloon containing nine capsules of heroin. Defendant said he would have his own "stuff" later in the afternoon, to return and he would give him a good deal on a few grams.

Defendant first claims he was denied a fair trial by reason of the nondisclosure of the person of Mexican descent who accompanied Officer Trujillo. On cross-examination the officer testified: the man "had some sort of levi pants"; he had not used the man before; he knew his first name—it was Richard —he did not know his last name or where he lived; he did not know and had no means of determining where the man could be located; the man was "5-7," about 24 years old, had black hair, brown eyes, weighed about 135 pounds; he did not know where he "hangs out" or could be reached.

It thus appears defendant received all the information possessed by the People with respect to the identity of Richard. The officer did not possess any information other than that to which he testified. There was no request for additional time in which to locate the person although defendant, when testifying, admitted he knew a Richard who fitted the description given by the officer.

The rule of disclosure of the identity of an informer does not extend to his production as a witness by the People. The theory of the rule is to give the defendant an opportunity to uncover facts relating to the informer's participation; permit an investigation of the information given to the officer; allow the defendant to locate and interview the informer and subpoena him; and give him a fair opportunity to substantiate his denial, impeach the testimony of the officer, and obtain information useful in the preparation of his defense. (*People* v. *Smith,* 174 Cal.App.2d 129, 133-134 [344 P.2d 435].) "If the officer does not know the name of the informer he does not suppress evidence by not stating it." (*People* v. *Prewitt,* 52 Cal.2d 330, 336 [341 P.2d 1].) Where the defendant receives what appears to be all the information possessed by the People concerning the iden-

tity of the informer, he is not denied a fair trial. (*People v. Rodriguez*, 175 Cal.App.2d 56, 59-60 [345 P.2d 330].)

██ Furthermore, in the case at bar, it may be inferred that defendant knew the informer since he rode with him in Trujillo's car and was present when the offense was committed.

██ Defendant says he "was entitled to a disclosure of the name of the informant at a time properly in advance of the trial." There is nothing in the record to indicate he made any effort to learn the name of the informer prior to trial. Not having done so, he cannot complain of nondisclosure before trial. (*Cf. People v. Norman*, 177 Cal.App.2d 59, 63-64 [1 Cal.Rptr. 699].)

### The Charge in the Information

About 12:30 p.m. on March 5, 1959, Officers Grennan and Hanks of the Los Angeles Police Department went to 455 North Ezra Street and placed the premises under surveillance. There was a single residence in the front of the property and a metal shack in the rear. The officers watched the shack. Defendant and one Martinez went in and out of the shack, going from the front of the property to the rear. On several occasions they were accompanied by other males who stayed 10 or 15 minutes, and left.

About 3 p.m. Grennan saw defendant and Martinez enter the shack and remain about five minutes. He went to the shack; the door was ajar, about half open. He looked in and said, "Police Officers." Defendant was standing in the center of the shack facing Grennan. When defendant heard, "Police Officers," he dropped a piece of newspaper he was holding. Grennan saw the newspaper, a spoon, an eye dropper, and a piece of plastic fall to the ground. Defendant placed his left hand to his mouth in a fast motion as "if he was swallowing something." Grennan then entered the shack, arrested defendant, and recovered the articles he had seen fall to the floor. He attempted to retrieve what had been swallowed but was unsuccessful. A search was made of defendant's trouser pockets, in which was found a vial of heroin.

On the arrest, this conversation occurred: Defendant: "I was just getting ready to have a fix when you came up." Grennan: "What did you swallow; how much junk did you swallow?" Defendant: "I ate a cap on you." Grennan: "What about this bindle of paper my partner found in your pocket?" Defendant: "Some fellow was here just a short while ago, and I had given it to him." Grennan asked de-

fendant what he was doing there. Defendant said he was waiting for "Stoojo," a fellow who lived there, to return. "Stoojo" returned to the shack in possession of 15 capsules of heroin and was arrested.

The arrest and search were made without a warrant.

█ It is asserted defendant was denied a fair trial because his arrest and the search of the shack were illegal. No objection was made at the trial to the introduction in evidence of the narcotics and paraphernalia found at the scene of the arrest. Consequently it cannot be urged they were seized illegally. (*People* v. *Brittain,* 149 Cal.App.2d 201, 203 [308 P.2d 38].) █ Looking through the half-open door of the shack did not constitute an illegal search. (*People* v. *Hurst,* 183 Cal.App.2d 379, 386-387 [6 Cal.Rptr. 483].)

█ The conduct of defendant while the shack was under surveillance together with what the officer saw from outside the shack constituted reasonable cause for the arrest and the search which was incident thereto. (*People* v. *Cantley,* 163 Cal.App.2d 762, 767 [329 P.2d 993].) The arrest was valid and the search was lawful.

Defendant asserts but does not argue that he was not properly defended by his attorney. We have examined the record and find no basis for the assertion.

The judgments are affirmed.

Shinn, P. J., and Ford, J., concurred.