1 Cal.3d 847 (1970)
464 P.2d 42
83 Cal. Rptr. 586
JOSEPH REGINALD ELEAZER, Petitioner,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.
Docket No. L.A. 29681.
Supreme Court of California. In Bank.
January 30, 1970.
*849 COUNSEL
Kim H. Pearman for Petitioner.
No appearance for Respondent.
Evelle J. Younger, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Real Party in Interest.
OPINION
TOBRINER, J.
Defendant Joseph Eleazer seeks a writ of prohibition to restrain the Superior Court of Los Angeles County from proceeding to try him on a charge of unlawful sale of seconal in violation of Health and Safety Code section 11912. Evidence at the preliminary hearing showed that a paid police informer was a material witness to the alleged sale. The police disclosed the name of the witness, but denied any knowledge of his address or of any way in which he could be contacted. For the reasons hereinafter stated we hold that when an informer becomes a material witness to the crime, the prosecution must demonstrate that it has attempted in good faith to locate him; the duty to disclose the identity of the informer cannot be evaded by deliberate failure to acquire information necessary to find him. Nevertheless, since previous California cases have not expressly imposed such a duty, we have concluded that the instant case should not be dismissed without presently affording the People an opportunity to comply with our ruling.
The district attorney filed an information charging defendant with an unlawful sale of seconal on April 8, 1969. At the preliminary hearing Officer Paniccia testified that he saw defendant sell five foil packets, later found to contain seconal, to a paid police informant known to him as Larry or "Spider." Defendant moved for discovery of the informer's identity. At *850 the hearing on that motion Sergeant Fesler disclosed that the informant was named Larry Stine, and furnished defendant with a physical description of Stine, a photograph, the police information sheet, and three arrrest reports.
When defense counsel inquired further, Sergeant Fesler testified that Larry Stine had participated in about 20 narcotics purchases with Officer Paniccia during April of 1969, and was paid in cash for his services. He stopped working for the police about three to four weeks before the discovery hearing.[1] Sergeant Fesler added that neither he nor Officer Paniccia made any effort to secure an address from Stine, and that he had no idea where Stine could be located. We set out in the margin the continued examination of Sergeant Fesler as to the whereabouts of the informant.[2] Upon *851 completion of the examination defendant moved for an order directing the district attorney to produce Larry Stine or to make him available for defense subpena or, if he could not be produced or made available, to dismiss the information. Upon denial of this motion defendant petitioned for a writ of prohibition to restrain further proceedings against him.
The issue which we face here as to the prosecution's duty in regard to the location of the informer is a recurrent one. We note several cases in which the data disclosed by the police clearly did not suffice to locate the informer; some defendants discovered only the informer's given name or nickname.[3]
(1) When an informer is a material witness on the issue of guilt, the People must disclose his identity or incur a dismissal. (Roviaro v. United States (1957) 353 U.S. 53 [1 L.Ed.2d 639, 77 S.Ct. 623]; People v. McShann (1958) 50 Cal.2d 802, 808 [330 P.2d 33]; see Evid. Code, §§ 1041, 1042.) Stine was both an eyewitness to, and participant in, the sale of seconal and without question was a material witness on the issue of guilt. What must be disclosed is the witness's "identity"; not merely his name, but all pertinent information which might assist the defense to locate him. (People v. Diaz (1959) 174 Cal. App.2d 799, 802 [345 P.2d 370]; United States v. Goss (S.D.N.Y. 1965) 237 F. Supp. 26.) (2) Thus, although the prosecution need not produce the informer as a witness,[4] it cannot withhold information which might assist the defense's efforts to locate and produce him.
We cannot accept the suggestion of many Courts of Appeal that the prosecution automatically fulfils its obligation of disclosure when it reveals *852 all that it knows, despite the inadequacy of such data to locate the informer.[5] The present case, moreover, does not merely involve an insufficiency of government knowledge; here the police deliberately resolved to make no effort to learn the residence of the informer or to establish a way by which to locate him. That the police did so without motive to harm defendant, but to foster the security of the informer, does not afford a sufficient justification. The language of People v. Kiihoa, supra, 53 Cal.2d 748, 754, applies: "[W]e cannot be indifferent to the resulting denial of defendant's substantial rights, however praiseworthy was the prosecution's motive in protecting the informer from threat of reprisal. Such motives and purposes cannot prevail when, as here, they inevitably result, intentionally or unintentionally, in depriving the defendant of a fair trial."
Frequently, of course, the informer will not be a material witness to a crime.[6] (3) When, however, through police tactics or happenstance the informer becomes a material witness, the police should make such inquiries and arrangements as are reasonably necessary to enable the prosecution and defense to locate him.[7] It is, after all, normal police practice to make such inquiries of material witnesses, and the testimony of an eyewitness may be as vital to the prosecution as to the defense. Certainly in the present case, after the informer was shown at the preliminary hearing to be a *853 material witness, and when he still remained in police employ, the police or district attorney should have undertaken a good faith effort at least to obtain his address or to make some arrangement under which he could be successfully subpenaed for trial; their failure to do so suggests a deliberate evasion of the defendant's right to a fair trial.
The federal courts in Velarde-Villarreal v. United States (9th Cir.1965) 354 F.2d 9, and United States v. Clarke (E.D. Pa. 1963) 220 F. Supp. 905, 909, adopting the substance of such an approach to the problem, ordered the government to engage in a reasonable effort to produce an informer at trial. In the former case the Ninth Circuit stated that "If Margarito [the informer] is available for hire, he should be available to come and testify. One wonders whether the agent might have made such an arrangement during one of those `contacts.'" (354 F.2d at p. 13.)[8] The court concluded that the government should bear the burden of proving "that it was genuinely unable through reasonable efforts to produce Margarito and also, if such be the case, that the Government did not take steps to see to it that Margarito would be or become unavailable as a witness." (354 F.2d at p. 13.)
(4) Although the federal cases speak of a duty to make reasonable efforts to produce the informer, the imposition of such a duty would violate the principle that neither party must produce or call all possible witnesses.[9] Due process requires only that the police and the district attorney undertake reasonable efforts in good faith to locate the informer so that either party or the court itself (see Evid. Code, § 775), could, if it so desired, subpena him as a witness.[10]
(5) The district attorney argues that before the People are required to initiate any such investigation, the defendant should show that he "cannot readily obtain the information through his own efforts." (Ballard v. Superior Court (1966) 64 Cal.2d 159, 167 [49 Cal. Rptr. 302, 410 P.2d *854 838, 18 A.L.R.3d 1416] (quoting Traynor, Ground Lost and Found in Criminal Discovery (1964) 39 N.Y.U.L.Rev. 228, 244).) The district attorney's contention puts the cart before the horse. The police will know whether the informer was a material witness before charges have been filed against the defendant; it is at this time that inquiries will probably be most fruitful. If investigation is necessary at a later date it is still better undertaken by the prosecution both because of its greater investigatory resources[11] and its superior knowledge of, and contacts with, the informer.
(6) So far as the record shows, neither party has made any attempt to locate Mr. Stine; the possibility remains that, with reasonable efforts, he could be subpenaed for trial. Under these circumstances, and in view of the fact that prior decisions did not set forth clearly the duty of the prosecution to make a reasonable effort to locate an informer who is a material witness, dismissal of the information is not warranted; the People should be afforded an opportunity to comply with this ruling by attempting to locate Mr. Stine.
The alternative writ of prohibition is discharged without prejudice, and the peremptory writ of prohibition is denied.
Traynor, C.J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J. concurred.
NOTES
[1] The preliminary hearing occurred on May 16, 1969; the discovery hearing at which Sergeant Fesler testified took place on July 21 of that year. If Larry Stine worked with the police until three or four weeks before the discovery hearing, he must have been in the employ of the police at the time of the preliminary hearing when Officer Paniccia's testimony showed that Stine was a material witness.
[2] "Q: [defense counsel] You don't have any records on him as far as where he lives, social security number, any of these types of information.

"A: This  his address is `transient' on the arrest reports.
"Q: ... Do you know where Mr. [Stine] presently is?
"A: No, sir.
"Q: Do you have any idea where he can be located?
"A: No, sir.
".... .... .... .... .... .... .... .... .... .... .... .
"Q: How would they [Stine and Officer Paniccia] meet each time they would go out to try to make these purchases? Where would they meet?
"A: ... Larry [Stine] would call up and say that he was at such and such a location, and Paniccia would go meet him there.
".... .... .... .... .... .... .... .... .... .... .... .
"Q: Now it's your position that neither you nor anybody in your office can locate this Larry or Spider so he can come in and testify in court next week?
"A: Not unless he calls me.
".... .... .... .... .... .... .... .... .... .... .... .
"Q: [by the deputy district attorney] Mr. Fesler, during the period of time that Mr. [Stine] was working for the police department did you or Mr. Paniccia make any efforts to secure from [him] his address or telephone number or other information, and if you did, what results did you have?
"A: I did not.
"Q: Do you know if Officer Paniccia did?
"A: I think at one time he might have had a phone number where he could be reached, but to the best of my knowledge Larry [Stine] moved from the location a short time later.
"Q: What I'm trying to get at is, was it a situation wherein  you already said he could call you?
"A: That's correct.
"Q: What was the reason for that....?
"A: It was to keep Larry [Stine] from having any fear that the police department was trying to arrest him or to put any pressure on him.... He didn't want me to know where he lived. The first time I met him I met him on a street corner.
"Q: Did you ask him?
"A: No, sir. I did not.... He'd be reluctant to give me any information if I'd pry into his personal affairs.
"Q: Do you find this to be the usual procedure with this type of informants?
"A: Yes, sir."
[3] See People v. Flores (1967) 253 Cal. App.2d 976 [61 Cal. Rptr. 230] (informer identified only as "Joe"); People v. Lara (1967) 253 Cal. App.2d 600 [61 Cal. Rptr. 303] ("Dave"); People v. Barone (1967) 250 Cal. App.2d 776 [58 Cal. Rptr. 783] ("Joe"); People v. Escoto (1960) 185 Cal. App.2d 599 [8 Cal. Rptr. 488] ("Richard"); People v. Valencia (1957) 156 Cal. App.2d 337 [319 P.2d 377] ("Sonny").

On March 26, 1969, we issued an alternative writ in Pepper v. Superior Court, L.A. 29638, in which the informant had been identified only as "Richard." The alternative writ was discharged as moot on May 15, 1969, after the superior court granted the district attorney's motion to dismiss the information.
[4] People v. Kiihoa (1960) 53 Cal.2d 748, 752 [3 Cal. Rptr. 1, 349 P.2d 673]; People v. Alvarado (1968) 258 Cal. App.2d 756, 759 [66 Cal. Rptr. 41]; People v. Flores (1967) 253 Cal. App.2d 976, 979 [61 Cal. Rptr. 230]; People v. Lara (1967) 253 Cal. App.2d 600, 604 [61 Cal. Rptr. 303]; People v. Avila (1967) 253 Cal. App.2d 308, 320 [61 Cal. Rptr. 441]; People v. Fontaine (1965) 237 Cal. App.2d 320, 327 [46 Cal. Rptr. 855], revd. on other grounds sub nom. Fontaine v. California (1968) 390 U.S. 593 [20 L.Ed.2d 154, 88 S.Ct. 1229].
[5] See People v. Flores (1967) 253 Cal. App.2d 976, 978 [61 Cal. Rptr. 230]; People v. Lara (1967) 253 Cal. App.2d 600, 604 [61 Cal. Rptr. 303]; People v. Avila (1967) 253 Cal. App.2d 308, 324-325 [61 Cal. Rptr. 441]; People v. Barone (1967) 250 Cal. App.2d 776, 780 [58 Cal. Rptr. 783]; People v. Wilson (1966) 239 Cal. App.2d 358, 366 [48 Cal. Rptr. 638]; People v. Escoto (1960) 185 Cal. App.2d 599, 601 [8 Cal. Rptr. 488]; People v. Alexander (1959) 168 Cal. App.2d 753, 754-755 [336 P.2d 565]; People v. Valencia (1957) 156 Cal. App.2d 337, 342 [319 P.2d 377]. We disapprove these cases to the extent that they are inconsistent with this opinion.
[6] See People v. McShann (1958) 50 Cal.2d 802, 808 [330 P.2d 33]; People v. De Leon (1968) 260 Cal. App.2d 143, 153 [67 Cal. Rptr. 45]; People v. Brown (1968) 259 Cal. App.2d 663, 671 [66 Cal. Rptr. 623]; Harney and Cross, The Informer in Law Enforcement (2d ed. 1968) p. 73.
[7] Compare Barber v. Page (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318]. One Woods had testified at preliminary examination; the state sought to introduce that testimony at trial on the ground that Woods, then confined in a federal prison, was unavailable to testify at the trial. The Supreme Court rejected this contention, noting that the state had not requested federal authorities to make Woods available, and holding that "a witness is not `unavailable' for purposes of the... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." (390 U.S. at pp. 724-725 [20 L.Ed.2d at pp. 259-260].)

Harney and Cross, in The Informer in Law Enforcement, supra, state that "Since the informer is not under police discipline or control, but is essentially a free agent, every precaution should be taken to preserve the integrity of his testimony if he is to appear as a witness. Under such circumstances it is, of course, important that he be available. This would mean that at the least he be photographed and fingerprinted. It would also mean, to the prudent officer, that he obtain as much background on his man as is conveniently possible." (P. 78.)
[8] We also query, in the present case, whether the police could have made use of one of their many phone calls and meetings with Stine to obtain from him information as to his whereabouts. In this connection it is significant that such contacts apparently took place after defendant's arrest and preliminary hearing. (See fn. 1, supra.)
[9] See cases cited in footnote 3, supra.
[10] In imposing a duty to undertake reasonable efforts to locate an informer we mean by an "informer" a person who regularly supplies information to the law enforcement agency, or who is compensated for the furnishing of information. Compensation may be cash, as in this case, but may also consist of promises of immunity or of lessened charges or punishment.

The "reasonable effort" required will, of course, depend on the facts of each case. If the informer has a regular abode and place of employment, simply obtaining his address and telephone number may suffice; if he is transient, or conceals his address, the law enforcement agency probably should make some arrangement for maintaining close communication with him.
[11] See Louisell, Modern California Discovery (1963) page 378; Traynor, Ground Lost and Found in Criminal Discovery, supra, 39 N.Y.U.L.Rev. 228, 229.