[Crim. No. 25616. Second Dist., Div. One. Aug. 27, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
A. J. MOORE, Defendant and Respondent.

**COUNSEL**

Joseph P. Busch, District Attorney, John E. Howard, Acting District Attorney, Harry B. Sondheim, Donald J. Kaplan and Jay J. Becker, Deputy District Attorneys, for Plaintiff and Appellant.

Charles A. Pope for Defendant and Respondent.

**OPINION**

LILLIE, Acting P. J.—Defendant was charged in three counts with violation of section 288, Penal Code, on which he was arraigned on April 8, 1974. On April 30, 1974, his discovery motion was heard, and at the conclusion of the testimony of his witness (Beverly Nelson) the court asked defense counsel if he was satisfied that the People had complied with his request. Counsel responded: "There is one other matter Your Honor, I would make a motion for discovery of, that between the dates of April 8 and April 15, at which time there was a continuance on this particular matter, on the date of April 8, when we were in court for the arraignment, I received information from my client that the parents of the prosecuting witnesses had indicated to him that the girls were not telling the truth. I relayed that information to the district attorney, and the district attorney did not have the file or anything at that time. However, they did indicate that they would talk with these particular witnesses.

"To my understanding, there has been conversation with these witnesses, the four that I previously mentioned, the parents and the two prosecuting witnesses, and/or other witnesses whom I don't know about, and I would make a motion at this time to request the sum and substance of that particular conversation, if there is any recording taken of it, or any written material, or even a relation of what occurred in that conversation." The deputy district attorney to whom defense counsel relayed the information on April 8, was the same deputy present in court on the motion. Commenting that it was of the opinion that "the defense would be entitled to the results of that conversation," the trial court suggested that the deputy submit a memorandum thereof. The deputy refused to disclose the results of his interview with the witnesses in question on these grounds—(1) "if the Court were to grant this motion before each and every trial, we would put the district attorney's office on the witness stand to testify as to what the witnesses were going to say";

(2) the material sought is the prosecutor's work product which is not discoverable; and (3) although he did interview the witnesses in question, he "would have done it on [his] own, so the mere fact that [defense counsel] would request that [he] talk to the witness is of no consequence to the Court." Thereupon defense counsel moved for disclosure of the "sum and substance of the conversation by the district attorney with the witnesses. I believe their names are Joe Sims, Christine Douglas, Joanna Sims, Sandra Douglas, and any others that I may not know of relative to my initiating the question of the credibility on April 8, 1974, in this courtroom." Pursuant to the motion the trial court made its discovery order[1] and continued the cause to May 10, 1974. On May 10 defense counsel advised the court he had not been furnished the material ordered; again the deputy district attorney declined to disclose the results of the interview with the witnesses as per the order; and the court dismissed the information.

The People appeal from order of dismissal "for lack of compliance with the court's discovery order."

In his appellate brief the district attorney reiterates his position taken at the trial level—that his conversations with the witnesses in anticipation of trial and any memorandum thereof were his work product and not discoverable; the defense cannot cast on the prosecutor the duty to "check into certain facts" and there is no "legal significance" to either such request or his consent to do so (citing *In re Ferguson*, 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234]); and defendant failed to make a showing of "good cause," materiality of the information sought and that he could not have discovered the facts himself.

The deputy district attorney at no time denied the incident of April 8, 1974, as related to the court by defense counsel on April 30, or denied that he indicated to defense counsel he would talk to the specified witnesses, in fact, he did interview them between April 8 and April 15.[2]

---

[1]Any present objection that the inclusion of "and any others that I may not know of relative to my initiating the question of the credibility on April 8, 1974, in this courtroom" renders the order too broad, is not well taken for no such challenge was before the trial court; this was not one of the grounds for the prosecutor's refusal to comply with the order. It is obvious that at no time did such a suggestion concern the deputy district attorney in the court below he having already interviewed the witnesses at the time the order was made.

[2]During the colloquy between the trial court and the deputy district attorney he was asked if he did interview the witnesses and his answer was "I certainly did, Your Honor. I'm not denying that." Then asked by the court "but you interviewed them before the discovery motion was completed and between the dates of April the 8th and April 15, correct?" the deputy district attorney answered "Correct."

No reasonable person can read the record before us and not find in defense counsel's act of "relay[ing] that information" on April 8 to the deputy district attorney, an implied request that he interview the parents to determine if the girls were telling the truth, and an implied consent on the part of the deputy district attorney to do so, in his "indicat[ion] that they would talk to those particular witnesses." Clearly there was an agreement to interview the witnesses for the defense, yet appellant is reluctant to raise the request and consent to the dignity of an agreement denominating it a consent "informally" expressed and "an apparently casual remark and reply," and arguing that such a request is of no "legal significance" and "the mere indication that the district attorney would talk with particular witnesses in no way says that he would talk with them solely to check on the allegations made by the defendant or that he would not have talked with them otherwise." Also we cannot other than read into the agreement to check on the information given to the district attorney by defense counsel, an implied understanding between counsel that the district attorney would disclose to him the results of the interviews. However, we do not base our decision herein on such implied understanding but on other considerations.

Appellant's position overlooks the salient fact that the discovery order was made pursuant to the agreement between counsel that the deputy district attorney would interview the witnesses. Thus there are before us no real issues arising out of who "initiated" the interview with the witnesses; whether the defendant could "readily obtain the information through his own efforts" (*Pitchess* v. *Superior Court (Echeveria)* 11 Cal.3d 531, 537 [113 Cal.Rptr. 897, 522 P.2d 305]), the record having established, and the trial court having impliedly found, that the defense was excused from complying with such an obligation by the prosecutor's agreement to comply with defense counsel's request; the policy that the law does not "impose a general duty on prosecutorial officials to serve as defense investigators" (*People* v. *Beagle,* 6 Cal.3d 441, 450-451 [99 Cal.Rptr. 313, 492 P.2d 1] [in *Beagle* no pretrial request was made by defendant; his contention that the prosecution failed to conduct a more complete investigation as to the cause of or reason for the fires and neglected to investigate the possibility that the fires were deliberately set to perpetrate a fraud on insurance companies, was an appellate contention]); whether such order here sanctioned a "fishing expedition" (*Pitchess* v. *Superior Court (Echeveria)* 11 Cal.3d 531, 537 [113 Cal.Rptr. 897, 522 P.2d 305]), which clearly it did not, the names of the witnesses having been specified in the request and they having been interviewed pursuant thereto prior to the making of the discovery order; whether

there was sufficient showing of "good cause" to justify discovery; and the extent of the applicability, if any, of the "work product" doctrine.

· We need not decide the extent to which the doctrine of attorney work product may bar disclosure of the prosecution's factual investigation in a criminal proceeding. Assuming without deciding that the bar to disclosure may be applicable, here there is an adequate record permitting disclosure despite the bar. ■ Only writings reflecting an attorney's impressions, conclusions, opinions, legal research or theories are absolutely barred from discovery by the work product rule. (Code Civ. Proc., § 2016, subd. (g).) Other work product is discoverable if the court determines that denial of discovery will unfairly prejudice trial preparation of the party seeking it or will result in injustice (Thompson, Cal. Civil Discovery Practice (Cont. Ed. Bar 1975) § 1.47). ■ Here the trial court could properly find from the prosecution's agreement to conduct the interviews that denial of their product would unfairly prejudice the trial preparation of the defense or otherwise result in injustice. Moreover, contrary to his repeated insistence that he interviewed the witnesses "in preparation for trial" thus the result constituted his "work product," the record establishes that the deputy talked to the four witnesses because he was asked to do so by the defense, he acted on information supplied by the defense and he interviewed the witnesses long before the cause was set for trial[3]—actually voluntarily assuming the duties of an investigator.

■ We base our opinion that the results of the interview are discoverable on the fundamental proposition that an accused is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information. (See *Pitchess* v. *Superior Court (Echeveria)* 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305].) "The fundamental responsibility to present material evidence to the court includes a duty to disclose to the defense substantial material evidence favorable to the accused in appropriate cases. (*In re Ferguson, supra,* 5 Cal.3d 525, 532.) Unless the prosecutor is required to make such disclosures the adversary system of criminal justice would be reduced to one in which the determination of guilt or innocence may be controlled by the prosecuting attorney's tactical choice to suppress favorable evidence, or his negligent failure to disclose it, rather than by the

---

[3]On April 8 the deputy consented to talk to the witnesses and interviewed them within a short time thereafter, between April 8 and April 15—a bit early for a busy deputy to be engaged in the preparation for the trial of a case that appears from the transcript of testimony taken at the preliminary hearing to be relatively simple, at a time no trial date was known; the cause·was not set for trial until April 15.

well-informed decision of the finder of fact. When such conduct hinders the ascertainment of truth, restraints must be imposed to prevent the denial of a fair trial as guaranteed by the due process clause of the Fourteenth Amendment of the Constitution of the United States. . . . [¶] ■ We recognize the foregoing cases [*Brady* v. *Maryland,* 373 U.S. 83 (10 L.Ed.2d 215, 218, 83 S.Ct. 1194); *In re Ferguson,* 5 Cal.3d 525, 532 (96 Cal.Rptr. 594, 487 P.2d 1234); *Giglio* v. *United States,* 405 U.S. 150 (31 L.Ed.2d 104, 92 S.Ct. 763)] as establishing a duty on the part of the prosecution, even in the absence of a request therefor, to disclose all substantial material evidence favorable to an accused, whether such evidence relates directly to the question of guilt, to matters relevant to punishment, or to the credibility of a material witness." (*People* v. *Ruthford,* 14 Cal.3d 399, 405-406 [121 Cal.Rptr. 261, 534 P.2d 1341].)

We do not know whether the results of the interviews are favorable to the defendant but on the state of the record we assume they constitute substantial material evidence helpful to the defense. If the interview with the parents casts grave doubt on the credibility of the children it cannot be denied that for a variety of reasons and even in the absence of a request therefor, the defense is entitled to its disclosure—whether the deputy investigates further, proceeds with the prosecution "as is" or dismisses the case. If on the other hand the deputy represents that the interview does not reflect adversely on the credibility of the complaining witnesses, so too defendant has the right without request therefor to discover this information, among other things, to determine if the conversation with the witnesses was fairly interpreted and if in light of the indication he had from the parents that the girls were not telling the truth, the interview in fact was unfavorable to him, and to use the information in any manner legally available to aid his defense or attack the credibility of the prosecuting witnesses, a crucial issue in sex offense cases involving young children, or their parents should they testify.

In *People* v. *Johnson,* 38 Cal.App.3d 228 [113 Cal.Rptr. 303], expert witnesses testified that bloody palm prints on decedent's bed sheet were defendant's, two defense experts said they were not. Defendant moved to discover the identity of any experts to whom the prosecutor admitted he showed the prints whose opinion was that the maker of the prints could not be determined. The court reversed the order denying discovery holding, "Here, Johnson's requested discovery could have led to information highly beneficial to him." (P. 235.) After examining the possible conclusions that could be reached by an expert examining the print, the court said at page 236: "Because the state bore the burden of

proving Johnson's guilt beyond a reasonable doubt, proof the print's maker could not be determined would have been helpful to Johnson, by throwing doubt on the People's case. The trial court's refusal to allow discovery denied Johnson valuable information which he could have used to cross-examine, impeach the expert who testified against him, and argue more vigorously the People's failure to prove guilt beyond a reasonable doubt."

It is unnecessary to inject in this case the issue of "good cause." Appellant contends "that no competent evidence was offered to the court to support the request of the defendant" and argues there was no showing of the materiality of the information sought or good cause for discovery. The materiality of the information sought is evident from the record. A showing of good cause appears to have been unnecessary because (1) the prosecutor acceded to defendant's request, and the discovery order was made pursuant to the agreement to interview the witnesses; and (2) *Ferguson* and *Ruthford* place on the prosecutor the obligation to disclose any substantial material evidence helpful to the defense "even in the absence of a request therefor" (*People* v. *Ruthford,* 14 Cal.3d 399, 406 [121 Cal.Rptr. 261, 534 P.2d 1341]) which seems to be entirely inconsistent with the concept of good cause. In any case, implicit in the trial court's order is a finding of good cause, and the record amply supports it.

The order of dismissal is affirmed.

Thompson, J., concurred.

HANSON, J.—I dissent. I would reverse with directions to vacate the order for discovery and to reconsider the motion on the grounds that the trial court did not properly weigh and consider the factors presented in exercising its discretion in granting the defense discovery motion which, in turn, formed the basis for the dismissal of the case.

While it is a general rule that a trial court's ruling should be sustained although based upon erroneous reasons if valid reasons exist, where the trial court's comments, as in the case at bench, indicate misconception of its duty in viewing matters which upon a proper view may have given a different result, an appellate court should not blindly affirm. (See, e.g., *Lippold* v. *Hart,* 274 Cal.App.2d 24, 26 [78 Cal.Rptr. 833], citing among other decisions *People* v. *Robarge,* 41 Cal.2d 628 [262 P.2d 14].)

In the case at bench, as I read the record, the controlling factor upon which the court below based its decision, as reflected in portions of in-court proceedings herein footnoted and quoted at length,[1] was the fact that defense counsel *"initiated"* the matter by requesting the prosecution

[1]The reporter's transcript of the April 30, 1974, hearing on defendant's discovery motion, incorporated in the clerk's transcript, reflects the following in-court colloquy between trial counsel and the court (following the defense examination of Beverly J. Nelson, investigating officer) which is germane to the issues presented on appeal:

"THE COURT: What about the motion now? Are you satisfied that the People have complied with your request?

"MR. POPE: Almost. There is one other matter, Your Honor, I would make a motion for discovery of, that between the dates of April 8 and April 15, at which time there was a continuance on this particular matter, on the date of April 8, when we were in court for the arraignment, I received information from my client that the parents of the prosecuting witnesses had indicated to him that the girls were not telling the truth. I relayed the information to the district attorney, and the district attorney did not have the file or anything at that time. However, they did indicate that they would talk with these particular witnesses.

"To my understanding, there has been conversation with these witnesses, the four that I previously mentioned, the parents and the two prosecuting witnesses, and/or other witnesses whom I don't know about, and I would make a motion at this time to request the sum and substance of that particular conversation, if there is any recording taken of it, or any written material, or even a relation of what occurred in that conversation. At the time of my drafting my motion for discovery, I did not know about these things. It was not included.

"I would like to cite as authority for this particular request *People* vs. *Johnson,* which is found at 38 Cal.App.3d, 228. It's a case that just came down by the Court of Appeals in the latest Advance Sheets which requires that information be discovered by a defendant in a criminal prosecution, and the information need not be even relevant to the ultimate issue, but if it has any relevance as to the credibility of a witness, whereby the opposing counsel, the defense counsel, could vigorously examine and impeach a witness, then that must be disclosed.

"THE COURT: Is Mr. Longo the district attorney that you related that to?

"MR. POPE: Yes, to Mr. Avazian and Mr. Longo. Mr. Longo, I understand, had subsequent talks with him. To my knowledge I do not believe that Mr. Avazian did.

"THE COURT: All right, Mr. Longo, I don't want to put you on the witness stand, but what is the situation with respect to that? I think the defense would be entitled to the results of that conversation. If you haven't reduced it to writing, perhaps a memorandum would be in order, under the circumstances.

"MR. LONGO: I respectfully decline to do that, Your Honor. First of all, I think it's a very serious matter. If the Court were to grant this motion before each and every trial, we would put the district attorney's office on the witness stand to testify as to what the witnesses were going to say.

"Further, Your Honor, I respectfully submit to the Court that in any preparation of any trial, as the Court well knows, as when he was counsel he talked to certain witnesses, Your Honor, I do not believe that the work product of any attorney, his interviewing of the witnesses, is—

"THE COURT: Let me interrupt you. I agree with you a hundred percent in what you are saying, but I have never made this request in the five years I have been sitting on the bench of any district attorney, so it doesn't happen in every case, number one.

"Number two, this was *initiated,* as I understand it, and if you disagree, tell me so, by defense by calling it to the attention of the calendar deputy in this court and yourself, that the parents of the complaining witnesses, as I understand it, requested such an

to interview certain witnesses and thus he (defense counsel) was entitled to information elicited from these witnesses by the trial counsel for the People when he interviewed them in preparation of his case for trial.

I would hold that the fact that defense counsel *asked* the prosecution to talk to certain witnesses is not determinative of the case at bench. The prosecution attorneys are not private investigators on call at the whim

interview, because there was some question in their mind as to the credibility of the youngsters involved who are the complaining witnesses. [Emphasis added.]

"Then, if you, as district attorney, or your superior, Mr. Avazian, did say that you would look into this matter on this basis, I believe that discovery is in order under those circumstances. This is not looking to how you prepared your lawsuit. This is something that was *initiated by the defense,* and that you in all fairness apparently were willing to look into, and now if you made a discovery that these people, these youngsters, are being truthful, that should be divulged to the defense, and if you made a discovery that in your opinion these children are being untruthful, that certainly should be also disclosed. [Emphasis added.]

"MR. LONGO: There is no doubt in my mind, Your Honor, that if I had some concrete evidence that they untruthful [*sic*], I would have to give that to the defense. Of course, my opinion is not admissible. I can't look into a person's head and determine whether or not they are telling the truth.

"THE COURT: All I'm asking you to do, if you will, Mr. Longo, is tell us in a memorandum or tell the defense in a memorandum what you asked and what the responses were. You do not have to give your evaluation or your opinion in the matter. But if you say, I'm not going to do anything, or keep a secret of what I found out, that is certainly, I think, improper, and your declination to do so on the basis that if you would do so in every case would result in divulging of work product, is not appropriate to this situation in this case.

"MR. LONGO: Well, let me say this, Your Honor. In each and every case where I have a young victim, it is my practice to interview the witness before the trial date. *Now, whether or not counsel would have asked me to do so, I would have done it on my own, so the mere fact that he would request that I talk to the witness is of no consequence to the Court.* Your Honor, the fact—[Emphasis added.]

"THE COURT: The point is that you did talk to them.

"MR. LONGO: I certainly did, Your Honor. I'm not denying that.

"THE COURT: All right. Now, if you did talk to them, you are in no different position, especially if you talked to them vis-a-vis their credibility, which I assume you did, because that's what you said, you did talk to them, why is this any different in any of the reports where representatives of your office, in a sense investigating officers talked to them. There is no difference.

"MR. LONGO: Your Honor, I'm the attorney of record on this matter, and I'm the person who is going to try the case, and I would submit to the Court, and I respectfully refuse to submit to this Court any written document or conversation I had with the victims in this case to the defense, and I respectfully refuse to do so. I don't think there is any case law which says that a district attorney, after interviewing his witnesses, must submit a written memorandum to what the conversation consisted of. I don't think there is any law to that effect, and I think the Court would be making an improper order, and I refuse on the basis there is not case law to support this order in doing so.

"THE COURT: You've made your position clear.

"All right, now, Mr. Pope, what is your motion, if any?

"MR. POPE: My motion is to disclose the sum and substance of the conversation by the district attorney with the witnesses. I believe their names are Joe Sims, Christine

and caprice of defense counsel. To conclude otherwise would do violence to our adversary system of justice and result in defense counsel's

Douglas, Joanna Sims, Sandra Douglas, *and any others that I may not know of relative to my initiating the question of the credibility on April 8, 1974, in this courtroom.* [Emphasis added.]

"THE COURT: It is so ordered."

The case was continued to May 10, 1974, for trial.

On May 10, 1974, defense counsel informed the court that he had not been furnished with material ordered on April 30,. 1974, as set out above. The court inquired of Mr. Longo, the trial attorney for the prosecution, as to his position respecting the "order that you provide a memorandum or tell the defense in a memorandum the questions and responses that you received and asked from the witnesses that you interviewed between" April 8 and 15, 1974.

After a preliminary discussion in court, the following occurred:

"MR. LONGO: Thank you, Your Honor.

"Your Honor, in any case, before I try a case, I interview my witnesses. Now, this case is set for trial today, and prior to this date I did interview the witnesses.

"Now, the fact that counsel asked me to interview the witnesses, Your Honor, I would have done so in any regard, whether he asked me to or not.

"Further, Your Honor, I would submit to the Court that I think this is part of the work product. I don't think it's a matter which can be discovered by a discovery motion.

"Now, I would agree with the Court if an investigator from our office did interview these witnesses, that matter would in fact be discoverable, whenever an attorney interviews a witness. However, Your Honor, I don't think that's a proper motion for discovery, and I refuse respectfully to submit to the defense any memorandum of any conversation I had with the victims of this case.

"I would state to the Court, however, at no time during any of the conversations that I had with the victims in this case did they indicate to me that there was anything but a truthful—let me put it this way—did they at any time indicate to me that this matter or this charge did not happen. I would submit it to the Court.

"MR. POPE: Your Honor, I do not believe that we were here for the purpose of arguing the motion again, because it had been submitted, and the order had been granted. However, I would like to clear the record. As far as the transcript is concerned, there was no intention at the time that the defense counsel asked the prosecuting attorney whether or not the girls told the truth. All that we asked were what statements were made, what was the sum and substance of the conversation, for the purpose of our trial, and this is all.

" . . . . . . . . . . . . .

"MR. POPE: Yes, Your Honor. If I am not going to be provided with that material, I will make a motion for dismissal in this particular matter, Your Honor, based upon my aforementioned statement concerning the right of the defense to have that particular information to prepare his trial, and without it, it certainly would not be a fair trial.

"THE COURT: All right. What is your response, if any, to that motion, Counsel?

"MR. LONGO: Your Honor, I would respectfully state to the Court, I do not intend to provide counsel with a copy of my trial preparation, and I would submit it to the Court, my trial preparation being my interview of the witnesses.

" . . . . . . . . . . . . .

"MR. LONGO: Your Honor, the interview which I had with the witnesses was not based upon the fact that counsel asked me to interview the witnesses. That's what I'm trying to say, because if that was the case, then each and every case—may I complete—

"THE COURT: I don't want you to repeat the fact that each and every case, counsel come in and ask you to divulge your interviews.

"MR. LONGO: No. What I'm saying, if in each and every case counsel came over to the prosecution and said, look, your witnesses are lying, I'd like you to interview them,

shirking their responsibility of using due diligence in trial preparation by obtaining information on their own efforts.

In my opinion, while voluntary cooperation between opposing counsel in supplying appropriate discoverable information without the necessity of a motion and court order is desirable and commendable, however, in the instant case, when it became apparent to the defense counsel that opposing counsel was not going to honor what he thought may have been a commitment by the prosecution to interview the witnesses referred to, it was encumbent upon him (defense counsel) to conduct his own investigation and/or make a proper showing, on motion, irrespective of who *initiated* the request without involving the trial court with a personal "hassle" or a misunderstanding between counsel as the determining factor.

In *People* v. *Beagle,* 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], the California Supreme Court, at pages 450-451, in answering the defendant's contention that he was denied due process of law because the prosecution failed to conduct a more complete investigation as to the cause of or reason for the fires in an insurance-fraud case, stated: "Contrary to defendant's contentions *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 851-854 [83 Cal.Rptr. 586, 464 P.2d 42], *does not establish a standard of judicial review of official pretrial investigations nor does it impose a general duty on prosecutorial officials to serve as defense investigators.*" (Italics added.)

---

and we interviewed them, which we would, in any respect, then we'd be compelled to furnish to defense counsel—all defense counsel have to do is come in, make the request that we do. Therefore we'd have to submit to them any of the conversation which took place between the witnesses. No, Your Honor, I would submit to the Court, I interviewed the witnesses, not as a result of counsel's request, but because I would have done so in any regard, and I'd submit it to the Court.

"THE COURT: But you interviewed them before the discovery motion was completed and between the dates of April the 8th and April 15, correct?

"MR. LONGO: Correct.

"THE COURT: Thank you, sir.

"The motion on the part of the defense that this matter be dismissed for lack of compliance with the Court's discovery order is granted, and the case is dismissed for those reasons and on that basis.

". . . . . . . . . . . . . . . .

"MR. LONGO: Could I inquire under what section this Court is dismissing the case, so it's clear for the record?

"THE COURT: It is dismissed as a sanction for the People's failure to comply with the Court's discovery motion.

"MR. LONGO: Thank you.

"THE COURT: And the defense would not be able to get a fair trial under the case of People vs. Ferguson, or In re Ferguson."

In *People* v. *Robarge, supra,* 41 Cal.2d 628, the California Supreme Court vacated a judgment and the order denying the motion for a new trial with directions to hear again and determine the motion in accordance with the rules stated. The California Supreme Court referred to a statement by the trial judge that "the Court sits as a thirteenth juror" as "an unfortunate connotation," as misleading and not a proper description of the function of the trial judge in passing upon a motion for a new trial.

Thus, in the case at bench, as previously stated, the trial court's repeated insistence and emphasis upon the fact that the defense *"initiated"* the matter showed its feeling or belief that this was decisive. In fact, the trial court expressed "one hundred percent" agreement with the position of the prosecution that there should be no discovery (where the prosecuting attorney did without request that which here was done). But the trial court disagreed with the prosecution's position that whether the defense had "initiated" matters was immaterial or of no consequence. It appears that the trial court ordered discovery solely because it felt the defense initiation of the matter was controlling and decisive. It is completely immaterial to discovery whether it was the defense or the prosecution initiated that which leads to information. The decisive matter is whether there should be discovery thereof under the circumstances regardless of which side initiated the matter. It was this false factor, however, which apparently caused the trial court to exercise its discretion in favor of ordering discovery, which, in my opinion, constituted error.

In *Pitchess* v. *Superior Court (Echevaria),* 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], the court stated that "civil discovery procedure has no relevance to criminal prosecutions" (p. 536); that "[u]nlike the statutory development of civil discovery in California, the right of an accused to seek discovery in the course of preparing his defense to a criminal prosecution is a judicially created doctrine evolving in the absence of guiding legislation"; that an accused's "motion to discover is addressed solely to the sound discretion of the trial court." (P. 535.) Further, "Allowing an accused the right to discover is based on the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." (P. 535.)

However, in *Pitchess,* the court pointed out that an accused is not automatically entitled to discovery merely because he desires such or merely to engage in a "fishing expedition"; in a criminal case, he must

show good cause, a showing which "may be satisfied by general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.'" (P. 537.) A factor to be considered is whether the accused could or could not "readily obtain the information through his own efforts." (P. 537.)

In the case at bench, the record reflects, as hereinbefore quoted at length (see fn. 1), that the defense motion for discovery which was granted by the trial court ended with the phrase, "and any others that I may not know of relative to my initiating the question of the credibility on April 8, 1974, in this courtroom." The latter clause is vague, uncertain and takes on the earmarks of a "fishing expedition," looked on with disfavor by the California Supreme Court in *Pitchess, supra.*

In addition, whether or not the defendant or his counsel could readily obtain the information through defense efforts is a matter of considerable importance. (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 537, and authorities cited.) The very statement made by defendant's counsel, which the trial court erroneously considered as decisive (having the so-called effect of "initiating"), would properly be considered as to whether the information was readily obtainable by defense itself. As previously noted, the defense counsel said that when they were in court for arraignment, "I received information from my client [defendant] that the parents of the prosecuting witnesses had indicated to him that the girls were not telling the truth. . . ." There is no showing that the defense could not obtain the same through defense's own efforts. To the contrary, the quoted statement indicates that the defense not only had contact and "an in" with these persons but through its own efforts easily could obtain the information from them if the defense had not already done so.

The recently decided case of *People* v. *Ruthford,* 14 Cal.3d 399 [121 Cal.Rptr. 261, 534 P.2d 1341], is factually distinguishable. In that case, defendant had been convicted largely on testimony of an alleged accomplice Thomas. Unknown to the defense, the prosecution had made a deal with Thomas that Thomas' wife would receive lenient treatment in an unrelated robbery prosecution in exchange for his favorable testimony against defendant. After defendant was found guilty by a jury, Thomas sent him a letter which said in part: "The D.A. came to see me and offered me [my wife's] freedom in return for my testimony against you." The existence of some sort of agreement to that effect was admitted by the prosecution on the new trial motion. Obviously, the

information had *not* been readily obtainable by defense efforts during trial before verdict.

The case of *People* v. *Johnson,* 38 Cal.App.3d 228 [113 Cal.Rptr. 303], relied on by defense counsel is, in my opinion, also factually distinguishable. In *Johnson,* the court denied the defense motion, during the trial, for the identity of expert witnesses who had examined bloody prints for the prosecution. The reviewing court, in holding the denial of the motion to be erroneous, noted (fn. 2, p. 235) that "[n]othing in the record permits the conclusion these experts were with the LAPD, or were readily available to Johnson." In the instant case, the defense counsel seeks what is claimed to be the "work product" of opposing counsel, i.e., the results of opposing counsel's interview with possible witnesses. Also, the record reflects that there is no showing by the defense that the witnesses were not "readily available" to him or his investigators.

In the case of *In re Ferguson,* 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234], also relied on by the defendant and the court below, the court said at page 532: "Implementation of this policy requires recognition of a *duty on the part of the prosecution to disclose evidence to the defense in appropriate cases.*" (Italics added.) *Ferguson* is factually distinguishable, and the instant case is not the "appropriate case" under its peculiar circumstances. In *Ferguson,* the evidence suppressed by the prosecution was criminal records of one Miller (an alleged victim) which could have been used by the defense in cross-examination.

In the instant case, following a discovery motion the records of the investigating officer were disclosed. What the defense sought were the results of an interview the trial attorney for the People had with prospective witnesses, without a showing that he (defense counsel) could not have obtained the information through his own efforts. In addition, *Ferguson* came up for appeal following a trial on the merits, while in the instant case, the trial court dismissed serious charges[2] at the outset of the trial for failure to disclose the information sought.

[2]One of the alleged victims, Joetta Sims (11 years of age), testified at the preliminary hearing that the defendant, her cousin, picked her up at Sunday school and took her to his home where he engaged in sexual intercourse with her, while another minor witness, Sandra Douglas, age 13, testified that the defendant "felt on my privates." The erroneous basis upon which the defense motion for discovery was granted precipitated the dismissal of the charges. The dismissal of such serious charges without a trial on the merits under the facts of this case because of a misunderstanding between counsel or because of a reneging on a commitment by one of the counsel tends to undermine the credibility of our system of criminal justice. As a practical matter, the issues on appeal may well have been resolved in the trial court with fairness to both sides of the counsel table, either

As to appellant's contention that the People's trial lawyer's interview of the witnesses shortly before trial was "work product," it is clear that "work product" principles applicable in civil actions under civil statutory discovery laws do not apply in full to criminal discovery proceedings. Nevertheless, as conceded by respondent Moore's counsel, there is in criminal discovery proceedings some application of "work product" principles, not to the extent applicable in civil cases but in a qualified or more restrictive manner. Much rests in the trial court's discretion which must be exercised in a manner to strike a balance between defendant's fair trial rights and the prosecution's right to trial preparation work including trial counsel's necessary right to talk to his prospective witnesses. Fairness and justice must be accorded both the accused and the prosecution as nearly as possible in application of the various principles. There are two sides to the counsel table.

It is provided as to civil discovery proceedings (Code Civ. Proc., § 2016, subd. (b)): "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances." While this civil case discovery statute does not apply to criminal discovery proceedings, clearly no greater immunity properly may be claimed than there permitted. *Suezaki* v. *Superior Court,* 58 Cal.2d 166 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073], was a civil discovery proceeding determined prior to the addition to section 2016, subdivision (b) of the aforequoted portion therefrom. The Supreme Court held that merely because matter sought to be discovered was "work product" of an attorney did not necessarily mean it was not discoverable. It was not absolutely privileged but its status as "work product" was a factor to be considered by the trial court in determining whether to grant or to deny discovery in whole or in part. Insofar as *Hickman* v. *Taylor,* 329 U.S. 495 [91 L.Ed. 451, 67 S.Ct. 385], expressed views in conflict with those expressed by prior California decisions, the *Hickman* case was held "not the law of California." (58 Cal.2d at pp. 177-178.)

The burden is upon the side claiming the subject matter to be of "work product" status. However, this burden does not come into

before trial by way of a continuance if more time was needed for discovery or investigation or proceeded by way of a writ, or as the case unfolded during trial, the need for the discovery may have evaporated. The defense had the power of subpoena, the right of cross-examination and the right to appeal following a trial on the merits.

existence until the other side (here, defendant Moore) first satisfies the burden of showing good cause for the requested discovery in the manner discussed in *Pitchess, supra,* which showing is absent in the case at bench under the current state of the record.

Appellant's petition for a hearing by the Supreme Court was denied October 30, 1975.